[Civ. No. 18256.   Second Dist., Div. One.   Dec. 13, 1951.]

LOUIS B. STRYKER, Appellant, v. REPUBLIC PICTURES CORPORATION et al., Respondents.

David J. Sachs for Appellant.

Loeb & Loeb and Herman F. Selvin for Respondents.

HANSON, J. pro tem.—The problem posed by this case is whether a general and special demurrer to the complaint was or was not rightly sustained. The demurrer was sustained with leave to the plaintiff to amend, but plaintiff elected not to amend on the theory that none of the grounds set forth in the demurrer was well taken. The question at issue is not primarily one of the law of privacy, as plaintiff would have us believe, but rather one of the law of pleading, based upon rules of law inherent in the substantive law of privacy. If, in the case before us, the plaintiff has in fact a perfectly good cause of action under the law for violation of his right of privacy we cannot assume he has any such right or cause of action based thereon unless his complaint sets it forth in a manner not vulnerable to a demurrer.

The complaint alleged that the plaintiff Louis B. Stryker, as a member of the Marine Corps, participated in the invasion and occupation of Iwo Jima in 1945 against the Japanese who at the time held the island; that at that time the plaintiff was a staff sergeant and was generally known among the invading

forces as "Sergeant Stryker." The complaint goes on to aver that subsequent thereto, in the year 1949, the defendant produced a motion picture play entitled the "Sands of Iwo Jima" which it caused to be exhibited throughout the United States and elsewhere for defendants' personal gain; that the picture depicts in part actual facts and occurrences, and in part is based on fiction; that the picture reenacts and depicts certain incidents, circumstances and conditions encountered by the plaintiff Stryker, while he was serving as an enlisted man in the Marine Corps in its campaigns against the Japanese Army in World War II on the islands of Iwo Jima and Guadalcanal; that the defendants advertised that the motion picture reenacted certain incidents of the life and activities of the plaintiff. The complaint proceeds to allege that the defendants did not consult with the plaintiff or at any time seek or obtain his consent or permission to use any portion of his past life, activities or name as a theme for publication or exploitation; that at no time had plaintiff given his consent to defendants, or any other persons, to use his past life, activities or name as a plot for the said or any other motion picture photoplay; that as a direct result of the unauthorized and wrongful producing, showing and exhibiting of said motion picture photoplay, and the consequent violation of the right of privacy of the plaintiff, the said plaintiff has been damaged in the amount of $150,000.

It will be noted from the allegations of the complaint that it is based on the theory *first*, that plaintiff's *actual activities* as a member of the Marine Corps could not be publicized at all as they invaded his rights of privacy as an individual and *secondly*, that the activities ascribed to him, whether based on fiction or on fact, likewise invaded his right of privacy under the law. In short, the plaintiff rests his cause of action on the theory that the mere use of his name along with a reenactment of a part of his life history, in part real and in part fictionalized for private gain, *ipso facto*, without more, spells out an invasion of his right of privacy.

The special demurrer to the complaint sought to elicit from the plaintiff to what extent, if any, the plaintiff claimed that the picture represented fictitious activities, on his part, rather than his actual activities. This request on the part of the demurring party defendant it seems plain should have been supplied by him unless he is correct in his contention that none

of his activities as a sergeant of the Marine Corps were subject to publication by way of a motion picture on the theory it invaded his rights of privacy.

The so-called independent right of privacy which is recognized in this state is not an absolute right "to be let alone" and to live one's life in utter privacy freed at all times from the prying eyes of the public or of a public recountal of the facts thereof. The right of the individual to privacy of his "private" life is a limited right in that it is always subject to the right of the public to a disclosure thereof where there is a proper warranted public interest as to the facts of his life. The dividing line between the individual right and the so-called public right is not easily drawn and must be determined in every instance by the facts of each case. The general test, in large measure, is whether the public interest in obtaining or having disclosed to it the information outweighs the protection of the individual's personal interest and desires. (See 48 Columb.L.Rev. 713, 717.) Accordingly, it is well established in this state that the so-called right of privacy to borrow apt language from *Sidis* v. *F-R Pub. Corp.*, 113 F.2d 806 at p. 809, permits "limited scrutiny of the 'private' life of any person who has achieved, or has had thrust upon him, the questionable and indefinable status of a 'public figure.' " (See, also, *Metter* v. *Los Angeles Examiner*, 35 Cal.App.2d 304 [95 P.2d 491]; Rest., Torts, § 867, comment d.)

In the complaint before us as has been stated it is alleged that the plaintiff was a sergeant in the Marine Corps. We think that men who are called to the colors subject their activities in that particular field to the public gaze and may not contend that in the discharge of such activities their actions may not be publicized. (*Continental Optical Co.* v. *Reed*, 119 Ind.App. 643 [86 N.E.2d 306, 88 N.E.2d 55, 14 A.L.R.2d 743].) This does not imply that their personal activities, unrelated to their activities in defense of the colors are necessarily open to public gaze. A politician running for public office, in effect offers his public and private life for perusal so far as it affects his bid for office. Not so a man called to the colors. The distinction between the two we think is clear.

The complaint avers generally by way of conclusion, and without any statement of ultimate facts, that the motion picture in question ascribed to plaintiff certain activities, without naming them, which were true and others that were purely fictional. It is not alleged that any of the activities of the

plaintiff in private life or while off duty were portrayed or that any of the activities as portrayed were false or detrimental or caused him any mental anguish of any kind or character.

█ As the right of privacy is not absolute, but limited it follows that ultimate facts must be alleged sufficient to show affirmatively that the plaintiff has (1) a *particular* right of privacy not subject to invasion; and (2) that the act of the defendant violated that right. █ A cause of action cannot exist without the concurrence of a right, a duty, and a default.

█ The phrase comprises every fact which if traversed, the plaintiff must prove in order to obtain judgment. (*Cf.* Pomeroy's Code Remedies, 5th ed., § 347.) In *Hutchinson* v. *Ainsworth,* 73 Cal. 452, 455 [15 P. 82, 2 Am.St.Rep. 823], the court said: "The facts upon which the plaintiff's right to sue is based, and upon which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong, make up *the cause of action.*

"If these facts taken together give a unity of right, they constitute but one cause of action."

"If a right as it usually exists is one dependent upon a condition, or—what is the same thing—is unconditional only when exceptional circumstances exist, in either case plaintiff, seeking to enforce such right, must, in order to state a right of action, either allege the facts to show the exceptional circumstances or the existence of the condition upon which the right depends." (*Houston Land & Trust Co.* v. *Sheldon,* (Tex.Civ.App.) 69 S.W.2d 796, 801.) The principle and its application is further illustrated by *Anniston Mfg. Co.* v. *Davis,* 301 U.S. 337 [57 S.Ct. 816, 81 L.Ed. 1143]. That was an action by a taxpayer to recover taxes illegally exacted because of the unconstitutionality of the statute under which they were levied and paid. A federal statute permitted a recovery of the taxes so paid provided that the taxpayer had not been reimbursed nor shifted the burden to another (such as a purchaser) directly or indirectly. The court speaking through Chief Justice Hughes held that the statute "substantively" limited the right to recover to cases where the taxpayer either had not directly or indirectly collected the tax from a purchaser or having so collected it had returned it to him. The court said quoting an earlier case that this " 'substantive limitation' was deemed to be 'an element of the right to a refund of such taxes,' although they were wholly invalid and not merely laid in excess of what was lawful, and hence the

statute required that this element, like others, 'be satisfactorily established . . .' '' Accordingly, the court sustained the dismissal of the cause below in turn based upon the sustaining of a demurrer to the complaint which had failed to set forth the requisite allegations of fact, i. e., to the effect that there had been no shifting of the taxes by the taxpayer.

In the case before us the complaint, in view of the law, carves out of the cause of the action as therein alleged the allegation pertaining to the actual activities of the plaintiff and, hence, leaves for consideration only the alleged fictional activities. But these activities are not stated by any ultimate facts and so cannot be differentiated or determined from the alleged actual activities of the plaintiff. Under the circumstances the complaint is vulnerable to the general demurrer for failing to state the cause of action by way of ultimate facts instead of conclusions, and is equally vulnerable to the special demurrer for failure to segregate the fictional from the actual activities relied upon by the pleader. Because of this impasse the demurrer, general and special, was rightly sustained.

In view of the conclusion we have arrived at it is unnecessary to consider the additional challenges levied against the complaint by defendant such as that it is deficient in that it fails to charge (1) that the Sergeant Stryker portrayed referred to the plaintiff rather than some other sergeant by that surname in the invading forces, or (2) that the fictionalized portrayal of the actual activities of the plaintiff were not in fact accurate portrayals of his actual activities or (3) that the fictional portrayals were in any manner untrue or discrediting or did not properly portray plaintiff's actual activities or (4) that the portrayal was in any sense an unwarranted portrayal of the actual activities of the plaintiff. It is unnecessary here to set forth in detail, these and other challenges raised by the special demurrer all of which could readily have been met by pleading over—a right which was specifically granted by the court below.

The case of *Binns* v. *Vitagraph Co. of America*, 210 N.Y. 51 [103 N.E. 1108, Ann.Cas. 1915B 1024, L.R.A. 1915C 839], so heavily relied upon by plaintiff, is not in point. Recovery was permitted in that case by reason of a New York statute for which no counterpart rests in California. That statute gives a cause of action for the use, without consent, of a person's name or photograph for the purposes of trade or of advertising. The dictum found in *Levey* v. *Warner Bros. Pictures* (D.C.N.Y. 1944), 57 F.Supp. 40, which has been quot

to us, is likewise based on the New York statute mentioned. The case of *Melvin* v. *Reid,* 112 Cal.App. 285 [297 P. 91], does not hold as appellant seems to think that a motion picture photoplay depicting the incidents of a person's life is in and of itself actionable. On the contrary the court itself said that ". . . the use of the incidents from the life of appellant in the moving picture is in itself not actionable." What the court held was that the incidents portrayed went so far that they should be regarded as an unwarranted intrusion into plaintiff's privacy. No comparable set of facts is presented in the instant case. The medium of the publication, as we view it, is not a controlling factor.

In this case we are not faced with a real and honest endeavor to comply with the ruling of the court below, as is often the situation in cases that come before us, but instead with an initial and continuing refusal to comply, based on the view that plaintiff's concepts of the law could not be challenged in the least by the court below. This concept, as we think we have adequately shown was erroneous and hence, it follows that the decision below was not erroneous.

The judgment is affirmed.

Doran, Acting P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1952. Carter, J., voted for a hearing.