[Civ. No. 21300.   Second Dist., Div. Two.   Jan. 30, 1956.]

LEWIS E. SMITH, Appellant, v. NATIONAL BROAD-
CASTING COMPANY, INC. (a Corporation) et al.,
Respondents.

Sanford Arak for Appellant.

Reed & Kirtland and Robert C. Packard for Respondents.

FOX, J.—Plaintiff appeals from a judgment of dismissal entered upon his failure to avail himself of leave to amend after an order sustaining a demurrer on both general and special grounds to his fourth amended complaint.

Plaintiff's fourth amended complaint embodied two counts, one count being an action for damages predicated upon defendants' tortious invasion of his rights of privacy. The incident on which plaintiff bottoms his right to recover is therein alleged as follows:

"VIII

"That a number of months ago Plaintiff made a report to the Police Department of the City of Los Angeles, State

of California, of the loss, escape or theft of a certain Black Panther animal somewhere within the confines of the City of Los Angeles, which report the Plaintiff, at the time that he made it, believed to be true, and which report was then made in good faith. Plaintiff, in that report, stated to Police that he had placed a Black Panther animal in a motor truck for transport and that the animal was no longer in the truck. The result was a City-wide and later a County-wide search for the animal. The people of the City of Los Angeles became frightened to the point where they would call police and report having seen or heard a Black Panther animal. The people of the City of Los Angeles became frightened and tense and began imagining that they saw and heard things that really did not exist. Many persons called the Police Department and reported seeing or hearing the Panther; in one instance it turned out to be a Black Cat; in another instance it turned out to be children playing games; other times it turned out to be nothing more than the imagination of the caller. Finally, after many days *the Police Department came to the conclusion that there probably was no Black Panther loose at all*; at about the same time the Plaintiff herein was informed that the animal had actually reached its destination; hence the report was withdrawn, the scare was over, and Los Angeles went back to normal. *The Plaintiff was arrested and was caused to be given Psychiatric examination as a result of this report which turned out to be untrue.* As a result of the incidents and occurrences above-depicted and above-described the Plaintiff was caused to become nervous and unsteady, and he was subjected to scorn and abandonment by his friends and was exposed to obloquy, contempt, and ridicule resulting in grievous mental and physical suffering.

"IX

"That by the passage of time from the time of making the above-described Police report on or about the 15th day of March, 1954, to June 15, 1954, a period of about three months had elapsed, and the Plaintiff had made new friends, began to overcome his nervousness and unsteadiness, had begun again to be respected by his friends, and had overcome the scorn and abandonment as well as the obloquy, contempt and ridicule and mental and physical suffering to which he had, as above-stated in paragraph VIII hereof, been previously subjected. However, on or about the last date here-

inabove mentioned, June 15, 1954, at or about 9:00 P. M., the Defendants National Broadcasting Co. Inc., KFI Radio Broadcasting Co., Liggett and Myers Tobacco Co. and Jack Webb, did, as above alleged in Paragraph VII hereof, broadcast and disseminate and/or cause to be disseminated over the airways that certain radio program entitled 'Dragnet' *which radio program was based upon the above-described incident involving the above described report to police, and which radio program did center around and about the incidents above-described, and which did portray the incidents and occurrences above set forth in Paragraph VIII hereof.* That the said Defendant National Broadcasting Co. Inc., KFI Radio Broadcasting Co., Liggett and Myers Tobacco Co., and Jack Webb, by disseminating or causing to be disseminated the said 'Dragnet' show, which show was based upon the above-described incident out of the Plaintiff's life did invade the Plaintiff's right of privacy by wilfully and maliciously taking and appropriating, using and publishing by portraying, broadcasting and disseminating without the Plaintiff's permission, knowledge or consent a thirty minute radio program under the name and title of 'Dragnet' which radio program was based upon the above noted report to the police department, by the Plaintiff, regarding the loss, escape or theft of the said Black Panther animal, and which report included all the details above set forth plus portraying the Plaintiff as the owner and operator of a carnival and animal show, which, in truth and in fact, he was. That by such broadcast the Plaintiff was again caused to become nervous and unsteady, again suffered scorn and abandonment by his friends, and was again subjected to obloquy, contempt, ridicule, and mental and physical suffering.'' (Emphasis added.)

The ensuing paragraphs allege that each of the defendants concerned with the "Dragnet" radio program, characterized as sponsor, disseminator, owner of the script, and producer thereof, appropriated "the above described incident out of the past life of the plaintiff" without the latter's consent for the purpose of their own commercial and financial gain. It is also alleged the appropriation and broadcast of that incident caused plaintiff to be discharged from his employment as an engineer and made it impossible for him to obtain employment in his profession because of "his consequent nervousness," all to his damage as particularly specified.

The second cause of action is for injunctive relief, plain-

tiff alleging that unless restrained from further invading his privacy, defendants will cause the above incident, described as the Los Angeles Black Panther Story, to be televised by the KNBH Television Studios on their weekly "Dragnet" program.

We are confronted, therefore, with the question of whether, upon the facts alleged, plaintiff has stated a cause of action entitling him to redress for a tortious invasion of his right of privacy. It might be pertinent to observe before proceeding with our discussion that it is not alleged that plaintiff's name was used, nor that there was any fictionalization of any phase of the activities ascribed to the character plaintiff identifies with himself, nor that any incident portrayed or dramatized was not a true or accurate version of the event described.

It is unnecessary for us to set out in full the several elements which are indispensable to the maintenance of an action for invasion of privacy, since plaintiff's complaint is fatally deficient in its failure to allege facts showing an infringement on any part of his *private* life or personality. The doctrine of the right of privacy, emanating from Judge Cooley's[1] propounding of the homely proposition of a man's "right to be let alone," and expanded by Warren and Brandeis[2] into a legal theorem which later won widespread judicial acceptance, has been recognized in this state (*Gill* v. *Hearst Pub. Co.*, 40 Cal.2d 224 [253 P.2d 441]; *Stryker* v. *Republic Pictures Corp.*, 108 Cal.App.2d 191 [238 P.2d 670].) The interest protected by the right of privacy is the right to be free from unwarranted publicity, from the wrongful publicizing of the *private* affairs and activities of an individual which are outside the realm of legitimate public concern. (*Coverstone* v. *Davies*, 38 Cal.2d 315, 322-323 [239 P.2d 876].) As stated in the Gill case, *supra* (p. 228), "the 'general object in view is to protect the privacy of private life, and to whatever degree and in whatever connection a man's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn' [citations]."

On the facts disclosed by the pleadings before the court, it is patent that an essential element of a cause of action is absent in the case at bar, viz., the incident involving

[1]Cooley on Torts (2d ed., p. 29).
[2]The Right to Privacy, 4 Harv.L.Rev. 193.

plaintiff was not drawn from his private affairs or activities but was known to the public and was a matter not only of public interest and record but of official concern to municipal authorities. As remarked in *Coverstone* v. *Davies, supra,* page 323: "There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place he emerges from his seclusion . . ." ▇ So where a person intentionally places himself in the public eye, or by the particular character of his conduct or activities has acquired, or has had thrust upon him, public notoriety, he relinquishes the right to live that segment of his life which has thus engaged the public interest absolutely free from public scrutiny. (*Stryker* v. *Republic Pictures Corp.,* 108 Cal.App.2d 191, 194 [238 P.2d 670].) ▇ In the case at bar, by making a false report to the Los Angeles police of the escape of a black panther from his truck, by precipitating thereby a state of fear and turmoil among the residents of the city, by being the cause of a widespread police search for many days for a dangerous beast that was never at large, and by being arrested when the police finally concluded there was no truth in his report, plaintiff became removed from the great mass of people entitled "to be let alone." By his participation in what ultimately proved to be a baseless report to the police but engendered great public turbulence before its untruth became known, plaintiff became stamped with the imprint of public notoriety and renounced his right of privacy insofar as this particular incident was concerned, for "there can be no privacy in that which is already public." (*Melvin* v. *Reid,* 112 Cal.App. 285, 290 [297 P. 91]; *Gill* v. *Hearst Pub. Co.,* 40 Cal.2d 224, 230 [253 P.2d 441].)

Defendants made no disclosures of any facts concerning plaintiff which were private, or not already in possession of the general public by virtue of his own conduct. The complaint before us clearly shows that defendants utilized only such parts of plaintiff's life which were already in the public domain and which had been spread upon the public records by virtue of his report to the police and his subsequent arrest by them. ▇ As stated in *Coverstone* v. *Davies, supra,* page 323: "In the instant case there is no such unwarranted publication by defendants of intimate details of plaintiffs' private lives. . . . The facts concerning the arrest and prosecution of those charged with violation of the law are matters of general public interest. Therefore, the pub-

lication of details of such official actions cannot, in the absence of defamatory statements, be actionable. [Citation.]''

■ There is no allegation that any fictional embellishments were added to the incident; plaintiff's name was not used; from the face of the complaint there appears only the fact that defendants broadcast a factual dramatization of an actual incident which had excited great public interest and concern and had resulted in plaintiff's arrest as the protagonist in the events described. It is clear that the principles which govern the right to recover for the invasion of one's privacy do not encompass facts such as are here alleged. (*Stryker* v. *Republic Pictures Corp., supra*; *Melvin* v. *Reid, supra*; *Bernstein* v. *National Broadcasting Co.*, 129 F.Supp. 817; *Smith* v. *Doss*, 251 Ala. 250 [37 So.2d 118, 120-121].) Defendants having appropriated only such biographical incidents as were already properly in the public domain as a subject of general and legitimate public interest, and as to which no right of privacy attached, plaintiff's right to recover on such theory must fail.

Plaintiff directs our attention to *Melvin* v. *Reid, supra,* and *Mau* v. *Rio Grande Oil, Inc.*, 28 F.Supp. 845. In both of those cases the plaintiff was identified by name in the publication by defendant, as the plaintiff was not in this case. This distinction clearly appears in the following pertinent language in *Melvin* v. *Reid, supra,* p. 290: ''. . . the use of the incidents from the life of appellant in the moving picture is in itself not actionable. These incidents appeared in the records of her trial for murder which is a public record open to the perusal of all. The very fact that they were contained in a public record is sufficient to negative the idea that their publication was a violation of a right of privacy. When the incidents of a life are so public as to be spread upon a public record they come within the knowledge and into the possession of the public and cease to be private. Had respondents, in the story of 'The Red Kimono,' stopped with the use of those incidents from the life of appellant which were spread upon the record of her trial, no right of action would have accrued. They went further and in the formation of the plot used the true maiden name of appellant. If any right of action exists it arises from the use of this true name in connection with the true incidents from her life together with their advertisements in which they stated that the story of the picture was taken from true incidents in the life of Gabrielle Darley who was Gabrielle Darley Melvin.''

■ Plaintiff seems to intimate that defendants lost any right they might have had to broadcast their dramatization of the "Black Panther" incident because their broadcast was made three months after the event, which had by then lost any current news value. It is a characteristic of every era. no less than of our contemporary world, that events which have caught the popular imagination or incidents which have aroused the public interest, have been frequently revivified long after their occurrence in the literature, journalism, or other media of communication of a later day. These events, being embedded in the communal history, are proper material for such recounting. It is well established, therefore, that the mere passage of time does not preclude the publication of such incidents from the life of one formerly in the public eye which are already public property. (*Stryker* v. *Republic Pictures Corp.*, 108 Cal.App.2d 191 [238 P.2d 670]; *Cohen* v. *Marx*, 94 Cal.App.2d 704 [211 P.2d 320]; *Melvin* v. *Reid,* *supra*; *Smith* v. *Doss*, 251 Ala. 250 [37 So.2d 118]; *Bernstein* v. *National Broadcasting Co.*, 129 F.Supp. 817, 828, 835; *Ettore* v. *Philco Television Broadcasting Corp.*, 126 F. Supp. 143, 149; *Samuel* v. *Curtis Pub. Co.*, 122 F.Supp. 327, 329.) As has been previously pointed out, in the radio dramatization disseminated by defendants, there was no identification of plaintiff in his present setting with that incident out of his past which was already in the public domain.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.