Erwin P. WERNER, Appellant,

v.

HEARST PUBLISHING COMPANY, Inc., Appellee.

No. 17256.

United States Court of Appeals Ninth Circuit.

Dec. 4, 1961.

Charles Murstein, Los Angeles, Cal., for appellant.

Flint & MacKay, Edward L. Compton and Arch R. Tuthill, Los Angeles, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and TAVARES, District Judge.

TAVARES, District Judge.

This is an appeal from final judgment of the district court dismissing the complaint of appellant, Werner (hereinafter sometimes also called plaintiff) against Hearst Publishing Company, Inc. (hereinafter called Hearst), based upon an alleged invasion of appellant's right of privacy by the publication of a news story in the Los Angeles Examiner, a daily newspaper of large and general circulation owned and published by Hearst. Jurisdiction below was founded upon diversity of citizenship (28 U.S.C. sec. 1332). This court has jurisdiction by virtue of 28 U.S.C. sec. 1291.

The principal facts alleged by the complaint are as follows:

Plaintiff is an attorney-at-law, duly licensed, and a member of the State Bar of California in good standing. He had been the elected City Attorney of Los Angeles from 1929–1933. On December 17, 1958, plaintiff and his fiancee applied to the county clerk of Orange county for a marriage license. The next day, an agent of Hearst's said newspaper asked plaintiff for information concerning his intended marriage. Plaintiff refused, explaining that his fiancee desired their plans to remain secret until she decided upon a marriage date. Contrary to plaintiff's request, the newspaper printed and published on December 19, 1958, under plaintiff's nickname, the story quoted in the margin.[1]

Plaintiff, claiming an infringement of his right of privacy, alleged that the publication was an account of events in

---

1.  " 'Pete' Werner to Take Third Wife.
     "Santa Ana, Dec. 18—One-time powerful figure of Los Angeles political circles, Erwin P. 'Pete' Werner, obtained a marriage license here today for his third trip to the altar.
     "The former Los Angeles City Attorney, who with his late wife, Helen, were

his life which had long prior to such publication ceased to be news and which were entirely unrelated to the application for the marriage license; he also alleged that the story was wrongful, malicious and untrue in the following respects:

(a) That reference to "hectic times during Mayor Shaw's regime" was intended to and did convey to readers that plaintiff was a part of scandals concerning the regime of Shaw, whereas he was not an official of the City of Los Angeles during Shaw's regime, and was not involved in any of the scandals during that regime.

(b) That the statement that plaintiff was disbarred after the "municipal scandal" was untrue, because plaintiff was not involved in any municipal scandal.

(c) That these references were intended to and did convey to readers that plaintiff was involved in scandals other than those mentioned in the article with which plaintiff had been charged but of which he had been vindicated.

(d) That the statement that "Werner made no mention of his past," was intended to and did convey to readers (1) an untrue implication that he was obliged, in connection with the application for a marriage license, to mention his past, and, by not doing so, concealed the same, and (2) an untrue implication that his past consisted of "municipal scandals" and other matters reflecting on his past.

(e) That, by referring to him and his deceased wife as "controversial figures", the article was intended to and did convey to readers that plaintiff was an object of controversy, a quarrelsome and disagreeable person.

(f) That the article, by referring to his deceased wife as "Queen Helen" was derisive and intended to embarrass and humiliate him.

(g) That the statement that his deceased wife had managed his campaign for City Attorney was untrue in that the campaign had been managed by another person.

(h) That the statement that such deceased wife "was regarded by many as the first woman political boss of a metropolitan city" was untrue and made for the purpose of ridiculing and deriding plaintiff.

(i) That the story was published and publicized wilfully and maliciously.

Plaintiff prayed judgment for general damages and exemplary damages and costs.

Appellee, defendant below, filed various motions, only one of which is involved in this appeal, being a motion to dismiss for failure to state a claim upon which relief

controversial leaders in politics in the 1930s, listed his full name as Erwin Peter Werner, his age as 65, his address as 801 South Gramercy Place.

"His bride-to-be gave hers as Marjorie Augusta Coburn, 46, a divorcee, of 1619 Thompson Street, Glendale.

"Werner's appearance recalled his career—from his admittance to the bar in 1916 to his campaign for city attorney and his hectic times during Mayor Shaw's regime.

"Woman Boss—

"Helen Werner, known as 'Queen Helen' during this period, managed his campaign for city attorney. She was regarded by many as the first woman political boss of a metropolitan city until 1937 when she and Werner were indicted on grand theft charges.

"Werner later was vindicated by the State Supreme Court after a lengthy court battle.

"Mrs. Werner, who was also cleared by court action, died of natural causes in 1947.

"Disbarred after the municipal scandal, Werner rehabilitated himself in a tough, uphill fight during the ensuing years— working as a train brakeman, in union grievance matters, as a research clerk and appraiser, as a Red Cross Blood bank driver, as a clerk in a law office.

"On February 2, 1954, he was reinstated as an attorney by the high court.

"Today, Werner made no mention of his past, nor did he list his present occupation. He just picked up the license and left."

could be granted. The district court granted the motion on this ground.[2]

■ This being a diversity case, generally speaking, the substantive law of the State of California, the place of alleged publication, is applicable in determining whether a claim has been stated upon which relief can be granted.[3]

As stated in appellee's answer, since appellant's Opening Brief was filed herein, the Supreme Court of the State of California, on August 9, 1961, denied a petition for hearing in the case of Werner v. Times-Mirror Company, decided June 15, 1961, by the District Court of Appeal (193 A.C.A. 108, 14 Cal.Rptr. 208).

In the Times-Mirror case the same plaintiff sued the Times-Mirror Company for a newspaper story substantially identical in all material respects with that involved in the instant appeal (differences between the statements in each article being minor and immaterial) based upon substantially the same theory of alleged invasion of privacy. Without going into detail, it suffices to say that the Times-Mirror case disposes, adversely to plaintiff-appellant, of all contentions made by him on this appeal.

Appellant contended here, on oral argument:

■ (1) That the fact that the California Supreme Court has refused to review the Times-Mirror decision, does not conclusively establish that that Supreme Court approves the rule therein laid down. This may prove to be so ultimately, in case the Supreme Court of California decides contra at some future date. But, be that as it may, the fact remains that, as the latest expression of the law of the State by an appellate State Court (albeit a court of intermediate appellate jurisdiction), this decision is binding upon us. American Employers' Insurance Co. v. Lindquist, D.C., 43 F.Supp. 610, 614; Six Companies of California v. Joint Highway District No. 13, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114, 117; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177, 61 S.Ct. 176, 85 L.Ed. 109, 112.

(2) Appellant further contended, on oral argument, that a Federal question is involved, upon which this Court is obliged to pass, in that sec. 48a of the California Civil Code is allegedly unconstitutional because it is claimed to violate the equal protection of the laws and due process provisions of the Constitution (U. S. Constitution, Amdt. XIV, sec. 1).

The constitutionality of sec. 48a was sustained under both the State and Federal Constitutions in the face of attacks upon the same grounds here raised, in Werner v. Southern California Associated Newspapers, 35 Cal.2d 121, 216 P.2d 825, 13 A.L.R.2d 252 (1950).[4] While in that case, the subject of libel alone was

---

2. The lower court's order, being brief, is quoted as follows:

"After consideration of the memoranda and points and authorities filed by the parties in support of and opposition to defendant's motion to dismiss the complaint, the court concludes that plaintiff has failed to state a claim for invasion of his right of privacy.

"The portions of defendant's published article which are complained of as constituting such an invasion concern plaintiff's past activities as a prominent political figure in the community; and the article is essentially of a newsworthy nature.

"It is to be noted that plaintiff, in his brief in opposition to defendant's motion to dismiss, expressly disaffirms any intention to state a claim for defamation.

"The aforesaid motion is granted and the cause dismissed for a failure to state a claim on which relief can be granted. See Stryker v. Republic Pictures Corp., 108 Cal.App.2d 191, 238 P.2d 670 (1951)."

3. Campbell v. Willmark Service System, 3 Cir., 123 F.2d 204, 206.
   Sweeney v. Anderson, 10 Cir., 129 F.2d 756, 758.
   Sweeney v. United Feature Syndicate, 2 Cir., 129 F.2d 904, 907.
   Watson v. Cannon Shoe Co., 5 Cir., 165 F.2d 311, 313.
   Wright v. R.K.O. Radio Pictures, D.C., 55 F.Supp. 639, 640.

4. Apparently, an appeal was filed by Mr. Werner to the United States Supreme Court in the Associated Newspapers case, but the appeal was dismissed on January 2, 1951, on motion of counsel for appellant. 340 U.S. 910, 71 S.Ct. 290, 95 L.Ed. 657.

involved, there is nothing in the nature of the right of privacy claimed in the instant case which would require a different conclusion, if that section as *now* construed in the Times-Mirror case, also applies to actions for alleged violation of the right of privacy of the type here involved.

Actually the question of the constitutionality of sec. 48a was not raised below by the plaintiff-appellant nor is it mentioned in his opening brief. Ordinarily this would be sufficient ground for this court to refuse to review the decision below. Rule 18, 2(d), Rules of the United States Court of Appeals for the Ninth Circuit, 28 U.S.C.A. However, appellant claims that his failure to raise the question below was due to the fact that nobody at that time had thought that sec. 48a was applicable, and no one had mentioned it; appellant claims that sec. 48a was injected into the Times-Mirror case for the first time by the California District Court of Appeal of its own motion when it filed its decision on June 15, 1961, while the present case was pending on appeal to this court, and hence appellant had had no opportunity to raise the question below. However, it can be pointed out that the Times-Mirror decision was filed eleven days before the appellant's opening brief was filed, and that that case is cited in appellee's answering brief filed herein August 14, 1961, which points out on page 8 thereof that the Supreme Court of California on August 9, 1961, denied a petition for hearing in the Times-Mirror case.

Be that as it may, no controlling Federal Case has been cited to us, and we have found none, which would compel or persuade us to rule contra to the Associated Newspapers decision of the California Supreme Court or that of the California District Court of Appeal in the Times-Mirror case on the Federal constitutionality issue.

We are not called upon, as was the court in Garner v. Triangle Publications, S.D.N.Y.1951, 97 F.Supp. 546, to decide whether under the law of any state other than California a cause of action exists for publication in that state of the article in question. In the Triangle Publications case, the allegations of the complaints in fourteen separate actions consolidated for joint trial, indicated that the articles complained of were published in many different states, although the suits were brought in the State of New York. There is no allegation in the pleadings nor does it otherwise appear in the record, that any part of the cause of action of plaintiff-appellant is based upon alleged publication of the article in any state other than California. With the facts thus narrowed to publication in the State of California, we are compelled to hold, in line with the foregoing authorities, that the decision of the Court below in dismissing plaintiff's amended complaint, was correct, and it is therefore hereby affirmed.