**TENNECO WEST, INC.,**
**Plaintiff-Appellee,**

v.

**MARATHON OIL COMPANY,**
**Defendant-Appellant.**

No. 84–6333.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1985.

Decided March 29, 1985.

Keith K. Hilbig, Smith & Hilbig, Torrance, Cal., for plaintiff-appellee.

Edward S. Renwick, Hanna & Morton, Los Angeles, Cal., for defendant-appellant.

Before PREGERSON and REINHARDT, Circuit Judges, and SCHWARZER,* District Judge.

SCHWARZER, District Judge:

The question presented on this appeal is whether the district court was correct in ruling that the tax clause in certain oil and gas leases shifts from lessor to lessee the incidence of the tax levied under the Crude Oil Windfall Profit Tax Act of 1980 ("Act"), 26 U.S.C. §§ 4986 *et seq.* (1982).

Tenneco West, Inc., plaintiff and appellee, ("Tenneco") is the lessor under certain oil and gas leases in Kern County, California. Marathon Oil Company, defendant and appellant, ("Marathon") is the lessee. The tax shifting clause in their leases requires Marathon to pay "any and all taxes ... *upon or referable to any operations or acts of* [Marathon] ... *including* ... the drilling or operation of any well or wells,

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

the production, extraction, severance or removal of any oil ..., the processes, refining, storage or use thereof, [and] the sale ... or the transportation thereof away from the demised premises."

Taking the position that this provision does not shift windfall profit taxes, Marathon has been withholding from the royalty payments due Tenneco under the leases the amounts of the tax attributable to Tenneco's royalty interest and remitting those amounts to the government. Tenneco made a demand on Marathon that it remit the full amount of the royalty to Tenneco and pay the applicable tax out of its own funds in accordance with the tax shifting clause. Marathon having refused, Tenneco brought this action for declaratory relief.

On cross-motions for summary judgment, the district court held the windfall profit tax to be a severance tax on production, imposed on each barrel of oil on removal and sale. As such it was found to fall within the scope of the tax clause which shifts to the lessee Marathon all taxes referable to operations upon the demised premises including taxes on production, severance, removal and sale.[1]

Because the question decided below was one of law, we review the decision de novo. We conclude that the decision of the district court was erroneous and reverse. Our decision rests on two separate and independent grounds.

## I.

▮▮▮ Tenneco brought this action to secure a declaration of its right under the leases to receive royalty payments free of the tax. Jurisdiction was founded on diversity of citizenship. State law therefore defines the rights of the parties. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Albert v. Joralemon,* 271 F.2d 236, 239 (9th Cir.1959) (lease interpretation a state law question); 28 U.S.C. § 1652. State law includes the decisions of state courts. Where an inter-

mediate appellate state court has decided an issue of state law, that decision "is not to be disregarded by a federal court unless it is convinced ... that the highest court of the state would decide otherwise" particularly "where ... the highest court has refused to review the lower court's decision...." *West v. A.T. & T. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *See also Stoner v. New York Life Insurance Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 337, 85 L.Ed. 284 (1940); *Werner v. Hearst Publishing Co.,* 297 F.2d 145, 148 (9th Cir.1961).

In *Crocker National Bank v. McFarland Energy, Inc.,* 140 Cal.App.3d 6, 189 Cal.Rptr. 302 (2d Dist.1983) (hearing denied), the California Court of Appeal interpreted a tax clause in an oil and gas lease containing language substantially identical to that before us. In that case, a royalty interest was conveyed subject to the obligation of the grantor to pay all taxes "upon or referable to any operations or acts [on the property subject to the lease] including ... the ... production, extraction, severance ... removal ... [or] sale" of oil. 140 Cal.App.3d at 7–8, 189 Cal.Rptr. 302. The case differed from that before us only in that the grantor of the royalty interest, rather than the grantee, was the operator of the property, a difference immaterial to the interpretation of the conveyance.

The court interpreted "taxes referable to any operations or acts" on the property as not including the windfall profit tax. It rejected the argument that the tax was on the removal of oil, reasoning that if that had been intended the references to profit in the Act would be surplusage and the tax would have been imposed on the basis of the number of barrels removed.

▮▮▮ While interpretation of the Act presents a federal question, determining whether the tax clause in the leases shifts the tax, however it may be characterized, is a matter of state law.[2] We interpret the

---

**1.** The opinion of the district court is reported at 564 F.Supp. 381 (C.D.Cal.1983).

**2.** The question before us is entirely different from that in *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886

*Crocker* decision as holding that the language of the tax clause does not shift this tax. In the absence of any evidence that the California Supreme Court would reach a different result, that decision is binding on us.

## II.

Even if we were to accept Tenneco's argument that the characterization of the tax presents a threshold federal question, we would reach the same result.

The Act imposes an "excise tax ... on the windfall profit from taxable crude oil removed from the premise...." 26 U.S.C. § 4986(a). The tax is imposed on the producer of oil, defined as the "holder of the economic interest with respect to the crude oil." 26 U.S.C. § 4996(a)(1)(A). This includes royalty owners such as Tenneco. *See* S.Rep. No. 394, 96th Cong., 2d Sess. 1, *reprinted in* 1980 U.S.Code Cong. & Ad. News 410, 413. Windfall profit is defined as "the excess of the removal price of the barrel of crude oil over the ... base price of such barrel." 26 U.S.C. § 4988(a).

The purpose and operation of the tax was described by the Supreme Court in *United States v. Ptasynski*, 462 U.S. 74, 76, 103 S.Ct. 2239, 2241, 76 L.Ed.2d 427 (1983) as follows:

> In 1979, President Carter announced a program to remove price controls from domestic oil by September 30, 1981.... By eliminating price controls, the President sought to encourage exploration for new oil and to increase production of old oil from marginally economic opera-

tions.... He recognized, however, that deregulating oil prices would produce substantial gains (referred to as "windfalls") for some producers. The price of oil on the world market had risen markedly, and it was anticipated that deregulating the price of oil already in production would allow domestic producers to receive prices far in excess of their initial estimates.... Accordingly, the President proposed that Congress place an excise tax on the additional revenue resulting from decontrol.

> Congress responded by enacting the Crude Oil Windfall Profit Tax Act of 1980, ... The Act divides domestic crude oil into three tiers and establishes an adjusted base price and a tax rate for each tier.... The base prices generally reflect the selling price of particular categories of oil under price controls, and the tax rates vary according to the vintages and types of oil included within each tier.

*Id.* (citations omitted).

Tenneco argues that the tax is a severance tax on production imposed at the wellhead as oil is removed and sold, and thus falls squarely within the explicit provisions of the tax clause. In support of this interpretation, Tenneco points to various statements by Congressmen describing the windfall profit tax as a severance tax and to the following statement contained in a House Report:

> The windfall profit tax is an excise, *or severance*, tax applying to all crude oil produced in the United States....

(1967), on which Tenneco relies. The question there concerned the effect of a state trial court determination of property interests on adjudication of federal estate tax liability in the federal court.

Nor does *Tipton v. Atchison, T. & St. F. Ry Co.*, 298 U.S. 141, 56 S.Ct. 715, 80 L.Ed. 1091 (1936), lend support to Tenneco's argument. The Court there said:

> If these decisions of intermediate courts of appeal, and the refusal of the Supreme Court of California to review them, amount to no more than a judicial construction of the compensation act as having, by its terms, no application in the circumstances, they are binding

authority in federal courts. If, on the other hand, the state courts excluded railroad employees injured in intrastate operations from the benefits of the compensation act, not as a matter of construction of the statute, but because they thought the Safety Appliance Acts required the State to afford a remedy in the nature of an action for damages, then the court below was right in disregarding that erroneous construction of the federal acts. 298 U.S. at 151–2, 56 S.Ct. at 719 (footnotes omitted). The *Crocker* decision is a judicial construction of the terms of a lease, not of federal law.

H.R.Rep. No. 96–304, *supra,* at 2, U.S.Code Cong. & Admin.News at 589 (emphasis added).

When read in context of the legislative history, however, these statements do not support Tenneco's position. Both the Senate and the House reports make it clear that the tax is on excess revenue realized as a result of decontrol. Thus the Senate Report states:

> The [Senate Finance] committee believes that the large price increases on previously discovered oil resulting from phased decontrol are an appropriate object of taxation.

S.Rep. No. 394, 96th Cong., 2nd Sess. 6, *reprinted in* 1980 U.S.Code Cong. & Ad. News, 410, 417. The House Report contains similar language:

> The committee believes that there should be a tax on the windfall arising from decontrol of crude oil prices and from excessive increases in world oil prices.

H.R.Rep. No. 304, 96th Cong., 2nd Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad. News 587, 591.

Moreover, "the nature of a tax must be determined by its operation rather than by particular descriptive language which may have been applied to it." *Educational Films Corp. v. Ward,* 282 U.S. 379, 387, 51 S.Ct. 170, 171, 75 L.Ed. 400 (1931). Here the tax is imposed upon incremental revenue. That liability for the tax is triggered by removal and sale of the oil does not make it "upon or referable to" those acts. It is the vintage and type of the oil, and other factors specified in the Act, that determine whether windfall profit tax is due upon its removal or sale. If the price realized on removal does not exceed the statutory base price or other statutory limitations,[3] no tax is due.

Tenneco's argument, that its receipt of taxable revenue from the sale of oil is "referable to" Marathon's acts on the property, when carried to its logical conclusion, would lead to shifting its income tax liability attributable to that oil to Marathon as well, a result clearly not contemplated by the tax clause.

We conclude, therefore, that the windfall profit tax is not a tax upon or referable to any operations or acts of Marathon.

The judgment is reversed and the case remanded for entry of judgment for appellant.

---

**3.** For example, § 4988(b)(1) limits windfall profit to 90 percent of the net income attributable to the barrel involved. Sections 4988(a)(2) and 4996(c) permit an adjustment for additional state severance taxes paid as a result of oil decontrol.