[Civ. No. 21800. First Dist., Div. One. Mar. 31, 1965.]

HILLTOP PROPERTIES, INC., Plaintiff and Appellant, v.
STATE OF CALIFORNIA, Defendant and Respondent.

350

351

Kouns & Sturges, Diel, Kouns & Sturges and Robert S. Sturges for Plaintiff and Appellant.

Harry S. Fenton, Holloway Jones, Jack M. Howard and Robert J. DeFea for Defendant and Respondent.

MOLINARI, J.—Plaintiff appeals from the judgment dismissing its amended complaint after it failed to further amend said complaint to which defendant's demurrer had been sustained. Plaintiff's amended complaint purported to state two causes of action, one based on inverse condemnation, the other,

on breach of contract predicated upon promissory estoppel. Among the grounds listed in its demurrer, defendant urged the defense of failure to state a cause of action. It was on this ground, as to both causes of action, that the demurrer was sustained.

## Questions Presented

1. Does plaintiff's complaint state a cause of action in inverse condemnation?

2. Does plaintiff's complaint adequately plead a promissory estoppel and a cause of action predicated thereon against defendant?

## The Complaint

The "First Cause of Action" of plaintiff's amended complaint alleges essentially that plaintiff is the owner of certain real property in the City of San Jose which includes two strips of land designated as parcels one and two; that these parcels, which aggregate approximately 1.645 acres and which possessed a market value of $20,000, were taken by defendant on September 8, 1961 for public purposes, that is, the widening of the adjacent Bayshore Freeway for highway and freeway purposes, without a preceding resolution to condemn said property. It is further alleged in said cause of action that during the months of July 1960 through September 1961, defendant, acting through its Department of Public Works, appointed the Planning Commission of the City of San Jose to communicate to plaintiff defendant's desires and needs with respect to plaintiff's property for the proposed highway use; that in compliance with the expressed needs of defendant, and at defendant's "specific instance, request, and requirement" plaintiff developed its land for subdivision purposes reserving parcels one and two for such proposed highway use; that these two parcels of land consist of long, narrow strips of land which cannot be used for residential, agricultural or any other use; and that they will remain useless until defendant determines that such land is necessary for highway widening purposes. It is then alleged that plaintiff has not been paid any compensation for such "appropriation," and that its claim therefor filed with the State Board of Control on June 23, 1962, was denied by said board on December 13, 1962.

In its "Second Cause of Action" plaintiff repleads all of the foregoing allegations and alleges further as follows: That during the months of May, July, August and September 1961,

defendant, by and through authorized agents on behalf of its Department of Public Works, "made certain promises and representations to plaintiff" with regard to said parcels one and two, to wit: that if plaintiff would reserve said parcels from its proposed subdivision, defendant would proceed to purchase said property for highway widening purposes at an agreed price of $12,820; that said intent was communicated to plaintiff in writing and is contained in a proposed "Right of Way Contract," dated September 7, 1961, approved by two of defendant's right-of-way agents; that plaintiff relied upon defendant's said promise and representation and did change its position in reliance thereon by leaving parcels one and two isolated and undeveloped while it proceeded to develop the balance of its property into single-family residential lots, thus rendering said parcels useless and of no value; that defendant should have expected, and did expect, a substantial change of position by plaintiff in reliance upon said promise; that on November 9, 1961, defendant repudiated its proposal to purchase said parcels; and that plaintiff is ready, able and willing to perform all of the terms and conditions of said agreement.[1]

 Our consideration of whether the subject complaint states one or more causes of action requires that we examine it in relation to certain well-defined rules. These are: "A demurrer reaches only the contents of the pleading and such matters as may be considered under the doctrine of judicial notice" (*Weil* v. *Barthel,* 45 Cal.2d 835, 837 [291 P.2d 30]; *County of Los Angeles* v. *Security First Nat. Bank,* 84 Cal. App.2d 575, 579 [191 P.2d 78]); the material and issuable facts pleaded in the complaint must be regarded as true (*Flores* v. *Arroyo,* 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Hauger* v. *Gates,* 42 Cal.2d 752, 755 [269 P.2d 609]; *Stigall* v. *City of Taft,* 58 Cal.2d 565, 567-568 [27 Cal. Rptr. 441, 375 P.2d 289]; *Hopper* v. *Hopper,* 224 Cal.App.2d 446, 447 [36 Cal.Rptr. 767]); a demurrer does not, however, admit contentions, deductions or conclusions of fact or law alleged in the complaint (*Marin* v. *Jacuzzi,* 224 Cal.App.2d 549, 552 [36 Cal.Rptr. 880]; *Howard* v. *City of Los Angeles,* 143 Cal.App.2d 195, 197 [299 P.2d 294]), or the construction placed on an instrument pleaded in the complaint (*Griffin* v. *County of Colusa,* 44 Cal.App.2d 915, 918 [113 P.2d 270]),

---

[1]A copy of the "Right of Way Contract" was attached to and made a part of the amended complaint. It contains the terms necessary for a valid and binding contract. The document was signed and executed by plaintiff, but was never finally executed on behalf of defendant.

or facts impossible in law (*Griffin* v. *County of Colusa, supra,* p. 918), or allegations contrary to facts of which a court may take judicial knowledge. (*Chavez* v. *Times-Mirror Co.,* 185 Cal. 20, 23 [195 P. 666]; *Griffin* v. *County of Colusa, supra,* p. 918; *American Distilling Co.* v. *Johnson,* 132 Cal.App.2d 73, 77 [281 P.2d 598]; *Livermore* v. *Beal,* 18 Cal.App.2d 535, 540 [64 P.2d 987].) ▉ We are also to be guided by the following basic principle: All that is necessary against a general demurrer is that, upon a consideration of all the facts stated, it appears that the plaintiff is entitled to *any* relief at the hands of the court against the defendant, notwithstanding the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged. (*Gressley* v. *Williams,* 193 Cal.App.2d 636, 639 [14 Cal.Rptr. 496].)

▉ The essence of a cause of action is the existence of a primary right and one violation of that right, i.e., it arises out of an antecedent primary right and corresponding duty, and a breach of such primary right and duty by the person upon whom the duty rests. (*Shell* v. *Schmidt,* 126 Cal.App.2d 279, 291 [272 P.2d 82]; *Smith* v. *Minnesota Mut. Life Ins. Co.,* 86 Cal.App.2d 581, 590 [195 P.2d 457]; *Stryker* v. *Republic Pictures Corp.,* 108 Cal.App.2d 191, 195 [238 P.2d 670]; *Frost* v. *Witter,* 132 Cal. 421, 426 [64 P. 705, 84 Am.St.Rep. 53]; *Work* v. *County Nat. Bank etc. Co.,* 4 Cal.2d 532, 540 [51 P.2d 90]; *Wulfjen* v. *Dolton,* 24 Cal.2d 891, 895 [151 P.2d 846].) The primary right and duty and the delict or wrong constitute the cause of action in the legal sense. (*South Shore Land Co.* v. *Petersen,* 226 Cal.App.2d 725, 740 [38 Cal.Rptr. 392]; *Smith* v. *Minnesota Mut. Life Ins. Co., supra,* p. 590.) ''The cause of action is simply the obligation sought to be enforced.'' (*Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 638 [134 P.2d 242]; *Eichler Homes of San Mateo, Inc.* v. *Superior Court,* 55 Cal.2d 845, 847 [13 Cal.Rptr. 194, 361 P.2d 914].)

### Inverse Condemnation

▉ Although plaintiff, in its first cause of action, alleges that defendant ''took for public purposes'' the subject parcels, this allegation is a statement of a legal conclusion and not of ultimate fact. Accordingly, it is not deemed admitted by the demurrer nor must such allegation be regarded as true. Although pleaded somewhat ineptly, it is apparent that the theory of this cause of action is that the subject parcels

were taken for a public use when they were caused to be withheld from the development of the larger parcel at the instance and request of defendant pending negotiation for their acquisition.

In *Frustuck* v. *City of Fairfax,* 212 Cal.App.2d 345 [28 Cal. Rptr. 357], this court had occasion to discuss the nature of an action in inverse condemnation. We there stated as follows: "The nature of the inverse condemnation suit is that the owner whose property is taken or damaged for a public use without the institution of a condemnation proceeding himself takes the procedural initiative by bringing an action for damages inherent in the particular taking or damaging. [Citations.] The inquiry posed by such an action is whether there has been a 'taking . . . for a "public use" . . . .' [Citation.] Such a taking is not restricted to a mere change of physical possession, but includes a permanent or temporary deprivation of the owner of the use or enjoyment of his land. [Citations.] Thus it may consist of an act of dispossession, or of acts of appropriation, destruction or damage. [Citations.] Accordingly, it may consist of a single act." (P. 364.)

In *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, 644 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A. N.S. 652], it was held that the "taking" of property within the meaning of the Constitution is not restricted to a mere change of physical possession, but includes a permanent or temporary deprivation of use to the owner, where such deprivation amounts to the abridgement or destruction, by reason of the actions of the state, of the lawful rights of an individual to the possession, use or enjoyment of his land. It has also been held that an undue restriction on the use of property is as much a taking for constitutional purposes as is an appropriation or destruction. (*People* v. *Associated Oil Co.,* 211 Cal. 93, 100 [294 P. 717].) These principles are in accord with the general rule recognized in most jurisdictions "that a destruction, restriction, diminution, or interruption of the rights of ownership or of the common and necessary use and enjoyment of property in a lawful manner, lessening or destroying its value, may constitute a taking for which compensation must be made to the owner of the property. . . ." (29 C.J.S., Eminent Domain, § 110, pp. 917, 918.) ▮ Accordingly, it is the rule that while it is not always necessary that there be an actual physical taking of any part of the property in order to have a taking, "it is necessary that there must be an invasion or an appropriation of some valuable property right which the landowner

has to the legal and proper use of his property, which invasion or appropriation must directly and specially affect the landowner to his injury." (*Hamer* v. *State Highway Com.* (Mo.) 304 S.W.2d 869, 871; see also 29 C.J.S., Eminent Domain, *supra*; 2 Nichols, Eminent Domain (3d ed) § 6.4432[2], p. 508.)

It is not contended by plaintiff that there has been, in the instant case, any actual or physical taking of its property. The precise question presented to us is whether the following facts constitute an invasion, appropriation, diminution or interruption of plaintiff's right of ownership, or of the proper and legal use and enjoyment of its property, within the meaning of the law relating to inverse condemnation: (1) The initial determination by defendant that it would require two strips of plaintiff's property in order to widen the highway; (2) the communication of this intention by defendant to plaintiff; (3) the preparation by plaintiff of subdivision maps reserving said strips from its property for such highway use "In compliance with the expressed needs of the defendant"; and (4) the development of plaintiff's property by reserving therefrom the subject strips of land for the proposed highway use "at the specific instance, request, and requirement of the defendant. . . ."

It is the general rule that a mere plotting or planning in anticipation of a public improvement is not a taking or damaging of the property affected. (64 A.L.R. 546; 18 Am. Jur., Eminent Domain, § 144, p. 772; *Hamer* v. *State Highway Com., supra,* p. 872.) In the article on Eminent Domain in American Jurisprudence, *supra,* it is stated that "In exceptional circumstances, however, as where a city does some unequivocal act evidencing an intention to open a proposed street, parkway, or other contemplated improvement, or where the prohibitory provisions of an ordinance or statute are such as actually to interfere with an owner's use of his property, it is held that the acts amount to a taking in the constitutional sense." (P. 772.) The authority for this principle is the annotation in American Law Reports above cited. This annotation cites two Pennsylvania cases in which this rule was applied.

In *In re Philadelphia Parkway*, 250 Pa. 257 [95 A. 429], it was held that a plotting or planning of a parkway may, when accompanied by other acts of the municipal authorities, create a situation so unusual and extraordinary as to constitute a taking which will entitle the owner to damages although

no ordinance was passed to open such parkway. There the situation which developed was that at intervals during a period of from 10 to 12 years certain properties in the area of the proposed parkway had been acquired by the city either by condemnation or by purchase, some buildings had been torn down, and some improvements made and work done on parts of the parkway. In holding that property owners were entitled to relief in damages because of the situation in which they had been placed, through no fault or act of their own, while waiting for the city to do something to relieve them from the hardships of the situation, the reviewing court allowed such relief on the basis that the facts warranted an exception to the general rule. The rationale of the holding is that the city's unequivocal acts evidencing an intention to open the parkway, followed by actual work done on the projected street, constituted such exceptional circumstances as to entitle the property owners to compensation.

In another Pennsylvania case, *In re Sansom Street*, 293 Pa. 483 [143 A. 134], the situation was also declared to be extraordinary. There an ordinance was adopted providing for the widening of a certain street and providing that after the confirmation of the new line on the city plan, it would be unlawful to erect a new building or rebuild or alter an existing one without receding to the new line insofar as the first floor was concerned, although it might be arcaded above a height of 16 feet from the pavement. As a result of this ordinance, the appellant, who owned an improved lot on this street and sought to rebuild upon his property, was left with a strip 2½ feet wide outside the highway limits, on which small area it would be impossible to build under existing building regulations. In holding that under these facts the appellant was entitled to damages, the court stated that it was not necessary for the property owner to wait until recession actually took place since he could not recede for any practical purpose and the law would not require him to do the vain and useless thing of tearing down the existing building and erecting one which could not be used.

The latter case clearly turns upon the enactment of an ordinance which by its terms prevents owners from building on a portion of their property because of the establishment of new building lines, where prior to the enactment thereof they had the right to build on all of the property. In such a situation it has also been held in several other jurisdictions that the passage of such an ordinance amounts to a taking of private prop-

erty for a public use. (See *Bissell* v. *Town of Bethel*, 113 Conn. 323 [155 A. 232]; *Curtis* v. *City of Boston*, 247 Mass. 417 [142 N.E. 95]; *Grove Hall Sav. Bank* v. *Town of Dedham*, 284 Mass. 92 [187 N.E. 182]; *City of St. Louis* v. *Hill*, 116 Mo. 527 [22 S.W. 861]; *People* ex rel. *Dilzer* v. *Calder* (N.Y.) 89 App.Div. 503 [85 N.Y.S. 1015].)

No California case has been found, nor has any been cited, which is similar, factually, to the present case. The cases relied upon by defendant appear to fall within the ambit of the general rule applicable to the mere plotting or planning in anticipation of a public improvement, and do not involve a consideration of "exceptional or extraordinary circumstances" warranting an exception to the general rule. In *Eachus* v. *Los Angeles etc. Ry. Co.*, 103 Cal. 614 [37 P. 750, 42 Am.St. Rep. 149], an action was brought to recover damages allegedly sustained as a result of construction work performed by the defendant railroad on the street adjacent to the plaintiffs' property. It was urged on appeal that the plaintiffs should have been entitled to recover damages from the time of the passage of the ordinance by the city fixing the grade rather than from the time the defendant railroad actually changed the grade. The appellate court, in rejecting this contention, stated as follows: "The damage sustained by the plaintiffs was caused by the actual grading of the street, and not by the ordinance fixing the grade. [Citations.] Until the physical condition of the street was changed their lot had received no actual damage for public use. The enactment of the ordinance rendered it possible that the street would at some time be reduced to that grade, but a mere paper change of grade did not affect the condition of the lot or impair its use or enjoyment. Any diminution in value that it might sustain from the mere passing of the ordinance was purely speculative and contingent upon the time when grading should be done, and would no more constitute the damage contemplated by the constitution [article I, section 14, which serves as the basis for eminent domain and inverse condemnation actions] than would a diminution in its value resulting from excessive taxation or the creating of a municipal debt." (Pp. 621-622.)

Similarly, in *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 754 [185 P.2d 597],[2] it was held, upon the authority of the *Eachus* case, that "The mere threat or possibility of construction of a public work is not actionable." There the city

[2]Disapproved on other grounds in *County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 679 [312 P.2d 680].

took a portion of plaintiffs' property for street widening purposes for which they were fully compensated. The widening was accomplished in 1932. As part of the project, and to eliminate a duplication of effort in the event of future construction of a viaduct in said street, foundations and stanchions were built underground. In 1939 the city approved plans which it had had under consideration since 1938 for the construction of such viaduct and the same was completed in October 1942. Plaintiffs sought damages for the period from 1932 until 1942 on the basis that there was a continuous construction of the viaduct from the construction of the foundations in 1932 until its completion. The reviewing court held that undisputed evidence showed that the plans for the viaduct were prepared, considered and approved within the period from July 6, 1938 to August 23, 1939 and that accordingly the construction work did not continue from the year 1932.

In *Silva* v. *City & County of San Francisco,* 87 Cal.App.2d 784 [198 P.2d 78], the plaintiff by way of an inverse condemnation action sought to recover damages for the anticipated future appropriation of a parcel of real property belonging to the estate of his decedent. The complaint alleged that the board of supervisors had declared that the city block on which the property of the plaintiff's decedent was situated be taken away from private ownership for the purpose of constructing a public playground; that the lots therein " 'be secured from their respective owners by purchase, and condemnation proceedings when necessary; . . .' " (P. 786.) At the time of the filing of the complaint, the plaintiff's property had not been appropriated, and on this basis the defendant demurred to the complaint, claiming that it failed to state a cause of action. The demurrer was sustained and judgment entered accordingly. On appeal this judgment was affirmed, the court stating as follows: "In the present case there has been no taking of the land—no entry or physical interference with plaintiff's property. Compensation is not payable until there is a 'taking,' or progress is made in the contemplated improvement." (P. 787.)

Also of interest is the Texas case of *Kirschke* v. *City of Houston* (Tex.Civ.App.) 330 S.W.2d 629. There the plaintiffs sought damages against the city upon allegations in their complaint that they had been denied a building permit "because it appeared that said property would be needed for highway purposes"; that they requested the city to purchase the property and that the city refused to do so at that time;

that the city's plans for condemning their property had not been finalized nor approved by appropriate authority; that "the denial of the building permit by the City amounted practically to a confiscation of their property and its beneficial use, . . . and a direct, actual and physical invasion of appropriation of their rights in said property . . . , and 'a taking.' " (P. 630.) The Supreme Court, affirming the trial court's judgment dismissing the suit, held that the owners could proceed with their building plans and could enjoin the city from interfering, but that they could not recover damages against the city since the acts of the city did not amount to a "taking."

The closest case, factually, to the case at bench which has come to our attention is *Hamer* v. *State Highway Com., supra,* 304 S.W.2d 869. There the Missouri Supreme Court was called upon to consider a petition for damages which alleged essentially as follows: The plaintiff owner of land had started to develop it as a subdivision. In doing so he had laid out, planned and located the lots, streets, and sewer ways. Shortly thereafter he was " 'plainly, positively and factually' " told by agents of the State Highway Commission that a new highway was to be constructed over a part of his land and that he should not develop that part which was to be used for right-of-way purposes because if he did so the improvements placed thereon would be lost to him. (P. 870.) Upon examination of the commission's plans and surveys for the proposed highway the plaintiff revised his own plans to conform to those of the commission. Negotiations then ensued for the purchase of a right-of-way over the plaintiff's land and an offer was made to him. Shortly thereafter, and while the plaintiff was considering the offer, he was advised that the commission " 'had changed its mind,' " that the location of the proposed highway had been changed, and that no land of the plaintiff's would be taken for highway purposes. (P. 870.)

In holding that these facts failed to state a cause of action for the taking or damaging of the plaintiff's property for a public use, the Missouri court concluded that no facts were alleged showing that the commission had in any way invaded or appropriated any valuable property right which the plaintiff possessed for the legal and proper use of his property. In its opinion the reviewing court stated as follows: "The quantum of plaintiff's interest in and the permissible use of his property has not in any way been reduced. What changes plaintiff made for the future use of his property in expecta-

tion that the Highway Commission would purchase or take by condemnation the right-of-way for the proposed highway were entirely voluntary on his part, although possibly ill advised under the resulting circumstances. It has expressly been held that there can be no recovery, by reason of the constitutional provision against taking or damaging private property for public use, for loss or expense resulting from voluntary acts of a landowner in making changes on his premises in expectation that condemnation proceedings will be prosecuted to judgment. [Citations.]'' (P. 874.)

We are satisfied that in the light of the foregoing principles plaintiff has not alleged any facts from which it can reasonably be inferred that defendant has in any way invaded, appropriated, or interfered with plaintiff's use or enjoyment of the subject property. The sum and substance of plaintiff's claim is that at the request of defendant it voluntarily made changes in the development of its land in anticipation that the Bayshore Highway would be widened. There are no allegations of exceptional or extraordinary circumstances bringing the case within the purview of the Pennsylvania cases since we do not have an unequivocal act evidencing an intention to widen the highway followed by actual work done on the projected widening, nor do we have an act of compulsion or interference with the enjoyment of the land such as is present in the mandate of an ordinance as was the situation in *In re Sansom Street*. In view of the persuasive rationale of *Hamer* we are constrained to hold that the request by defendant that plaintiff withhold the subject strips of land from its development does not constitute an unequivocal act evidencing an intention to take them for public use. We do not believe, moreover, that the use of the word ''requirement'' in the allegation that the subject strips were withheld from development at defendant's ''specific instance, request, and requirement'' can be taken as an allegation of compulsion so as to constitute the unequivocal act which might bring the case within the exception to the general rule. A reading of the complaint indicates that ''requirement'' was used in the connotation of need rather than of compulsion. Assuming *arguendo* that the subject word was used in the sense of compulsion it amounts to no more than a legal conclusion which under the rule hereinbefore discussed we are not required to accept as true. It should be here pointed out that the lower court sustained the demurrer with leave to amend and that plaintiff declined to do so. Accordingly, plaintiff elected to stand on its complaint and

therefore the judgment of dismissal must be affirmed if the complaint is objectionable upon any ground raised by the demurrer. (*Sutter* v. *Gamel,* 210 Cal.App.2d 529, 533 [26 Cal.Rptr. 880]; *Haldane* v. *Bogy,* 208 Cal.App.2d 298, 301 [25 Cal.Rptr. 389].)

## Promissory Estoppel

In its "Second Cause of Action" plaintiff pleaded facts purporting to bring it within the ambit of the doctrine of promissory estoppel. ▆▆ The doctrine of promissory estoppel is stated in section 90 of the Restatement of Contracts as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This rule is applicable in California. (*Drennan* v. *Star Paving Co.,* 51 Cal.2d 409, 413 [333 P.2d 757]; *Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642, 653 [255 P.2d 772]; *Hunter* v. *Sparling,* 87 Cal.App.2d 711, 725 [197 P.2d 807]; *Frebank Co.* v. *White,* 152 Cal.App.2d 522, 525 [313 P.2d 633]; *Morrison* v. *Home Savings & Loan Assn.,* 175 Cal.App.2d 765, 768-769 [346 P.2d 917].) ▆▆ "The very purpose of section 90 is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' [Citation.] Reasonable reliance serves to hold the offeror in lieu of the consideration ordinarily required to make the offer binding." (*Drennan* v. *Star Paving Co., supra,* p. 414.) ▆▆ Promissory estoppel is a theory of recovery which is allowed where injustice can be avoided only by enforcement of the promise, this usually occurring where the plaintiff has made a complete and substantial change of position in reliance upon the promise. (*De Zemplen* v. *Home Federal S. & L. Assn.,* 221 Cal.App.2d 197, 207 [34 Cal.Rptr. 334].)

▆▆ In the light of the foregoing principles our immediate inquiry is whether plaintiff's amended complaint alleges sufficient facts to plead a promissory estoppel against defendant. It is therein alleged that defendant by and through its authorized agents promised plaintiff that if it "would reserve from its proposed subdivision" the subject strips of land defendant would proceed to purchase the said property for highway widening purposes at an agreed price of $12,820; that defendant should have and did reasonably expect "a substantial change of position by plaintiff in reliance upon said promise to purchase the said parcels"; that plaintiff in

reliance upon said promise left said parcels isolated and undeveloped when it proceeded to develop its land; and that because of their size such parcels have been rendered useless for residential, agricultural, or any other purpose except for highway widening purposes.[3]

 Since detrimental reliance is an essential feature of promissory estoppel, that doctrine cannot be invoked where the promisee's reliance was bargained for, the law of consideration being applicable in such a case; it is only where the promisee's reliance was unbargained for that there is room for the application of the doctrine. (*Healy* v. *Brewster*, 59 Cal.2d 455, 463 [30 Cal.Rptr. 129, 380 P.2d 817].) Although the allegations of the complaint are susceptible to the interpretation that at the time the alleged promise was made defendant requested plaintiff to withhold the subject parcels from development, thus bargaining for plaintiff's reliance by making the doing of what was requested the consideration, the allegations are equally susceptible to the interpretation that plaintiff's act of withholding the parcels from development was not given in exchange for defendant's promise to purchase such parcels. In other words, the allegations are such as to warrant the conclusion that defendant was not bargaining for plaintiff's reliance. These allegations, as well as those purporting to allege that defendant reasonably expected to induce forbearance of a definite and substantial character on the part of plaintiff, are sufficient as against a general demurrer. In the absence of the interposition of a special demurrer on the ground of uncertainty, the subject allegations sufficiently allege facts from which it can reasonably be inferred that defendant promised to purchase the subject parcels, that there was no consideration given therefor

---

[3]The amended complaint alleges further that defendant's intent and desire to acquire said strips is evidenced by three exhibits attached to the complaint. This allegation is conclusionary. The exhibits are likewise evidentiary in character. However, since no special demurrer on the ground of uncertainty was interposed they serve to establish elements of promissory estoppel. Exhibit C consists of a letter to the Division of Highways from a real estate agent purporting to represent the owners of the subject land inquiring as to when negotiations for the purchase of such property would be completed. Exhibit C-1 is a response to this letter written by the Division of Highways and indicating the approximate date at which defendant would be in a position to negotiate the purchase. This letter concludes as follows: ''Thank you for your cooperation in withholding lands from development for highway purposes.'' Exhibit D is the already referred to right-of-way contract which bears the approval of defendant's right-of-way agents, is signed by plaintiff, and was completed in all respects except for the final signature by an agent of the state.

in the sense of something that is bargained for and given in exchange, and that defendant expected the forbearance in which plaintiff alleges it indulged because of defendant's promise.

Assuming the truth of the facts pleaded, as we must in considering the sufficiency of the subject pleading, a situation has been pleaded under which it would be proper to invoke the doctrine of promissory estoppel. The facts are sufficient to satisfy the essential requirement that there must be a promise upon which reliance may be based. (See *Bard* v. *Kent,* 19 Cal.2d 449, 453 [122 P.2d 8, 139 A.L.R. 1032].) The facts pleaded are such as to show that promises and representations were made by defendant's authorized agents, and a course of conduct indulged in by them, which led plaintiff to believe that defendant would purchase the two strips of land for $12,820; and that plaintiff relied upon such oral promise to its detriment. This detriment, pleaded in terms of the uselessness to which the subject strips of land have been rendered by reason of plaintiff's reliance upon defendant's promise, is such as to indicate that justice can be done only by enforcement of the promise.

It should be noted here that estoppel has been applied with some reluctance insofar as its application against a governmental body is concerned, since it is the general rule that a governmental agency may not be estopped by the conduct of its officers and employees. (*Farrell* v. *County of Placer,* 23 Cal.2d 624, 627 [145 P.2d 570, 153 A.L.R. 323]; *County of San Diego* v. *California Water etc. Co.,* 30 Cal.2d 817, 825 [186 P.2d 124, 175 A.L.R. 747].) Estoppel has, however, been applied against the state or a governmental body in some exceptional cases or in situations where justice and right required it. (See *Farrell* v. *County of Placer, supra,* pp. 627-628; *Tyra* v. *Board of Police etc. Comrs.,* 32 Cal.2d 666, 671 [197 P.2d 710]; *Lorenson* v. *City of Los Angeles,* 41 Cal.2d 334, 340 [260 P.2d 49]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 328-329 [44 P.2d 547]; *City of Los Angeles* v. *Cohn,* 101 Cal. 373, 376-378 [35 P. 1002]; *McGee* v. *City of Los Angeles,* 6 Cal.2d ·390, 394 [57 P.2d 925]; *City of Los Angeles* v. *County of Los Angeles,* 9 Cal.2d 624, 630 [72 P.2d 138, 113 A.L.R. 370].) In each of the last-cited cases the Supreme Court fashioned an exception to the general rule that estoppel is inapplicable against a governmental body and applied the exception to the particular facts of the case. While each of these cases involved the application of an equitable estoppel, we are satisfied that in a case where

justice and right require it promissory estoppel may be invoked against a governmental body where it would not operate to defeat any strong public policy or result in the indirect enforcement of an illegal contract. (See *County of San Diego* v. *California Water etc. Co., supra,* p. 826.)

In *San Diego* the plaintiff brought an action to enjoin the flooding of a portion of a county highway, which flooding would result when the dam being constructed by the defendant, a public utility company, would be completed. The defendant contended at the trial and on appeal that the county by its conduct was estopped to obtain the relief sought. Specifically, the defendant claimed that the waiver by the plaintiff of damages from the defendant's flooding of the highway (these waiver provisions were contained in two separate contracts entered into between the plaintiff and the defendant, by which the plaintiff obtained easements over portions of the defendant's property) amounted to an implied in fact agreement to abandon the existing road and to relocate the whole road at the county's own expense. The Supreme Court in affirming a judgment in favor of the plaintiff, held that estoppel could not be invoked against the county because to do so would operate to defeat the effective operation of a policy adopted to protect the public. The reviewing court there stated as follows: "Here, however, we are directly concerned with strong considerations of policy. The Legislature, for the protection of the public, has declared that a road may not be abandoned without notice, a hearing, and a finding that the road is unnecessary for present or prospective public use. Enforcement of a bare promise to abandon would not only mean a complete disregard of these salutary legislative requirements but would also be inconsistent with the additional policy against the making of contracts by a public body to exercise its discretionary governmental powers in a particular manner. By indirect enforcement of such a 'contract' the needs of persons using the highway might be ignored, and a method would be afforded by which officials and persons dealing with the agency could evade the law. (Cf., *Miller* v. *McKinnon,* 20 Cal.2d 83, 88-90 [124 P.2d 34, 140 A.L.R. 570].)" (Pp. 826-827.) Although *San Diego* does not specifically mention "promissory estoppel" but merely refers to "estoppel," it is clear from the opinion that the Supreme Court was dealing with the former species of estoppel since it specifically noted that the claim of estoppel was there based solely upon the theory that the acts of the county

constituted an implied in fact *promise* to relocate or an implied representation that it would do so, upon which the company relied to its detriment. "Application of estoppel under these circumstances," said the court, "would obviously be tantamount to specific enforcement of the void promise to abandon, relocate, and waive damages, contrary to both the policy and letter of the law." (P. 827.)

It is significant to note, however, that in *San Diego* the Supreme Court recognized that promissory estoppel may be invoked against a governmental body in a proper case. Thus, in distinguishing the case before it from that of *Greene County* v. *Tennessee Eastern Electric Co.* (6th Cir. 1930) 40 F.2d 184, the reviewing court noted that in the latter case, since the county had the power to waive damages to the bridge in question, it would be estopped where it had given assurance that there would be no claim for damages and had agreed by resolution to relocate a bridge which would be flooded when a utility company raised its dam. Similarly, in distinguishing the case of *City of Los Angeles* v. *Cohn,* 101 Cal. 373 [35 P. 1002], where it was held that a city was estopped to complain that a building encroached on a street where private persons had possession of the land for over 40 years, the Supreme Court in *San Diego* noted "that the conduct of the city was equivalent to *an agreement* to locate the true boundary line of the street, and a city may properly make such an agreement where the boundary is uncertain. [Citation.]" (Italics added; p. 829.)

It is apparent, therefore, that the rationale of *San Diego* is based upon the principle that it is basic law that contracts of governmental bodies must be authorized by law, and that all unauthorized contracts are null and void. (See Cal. Const., art. IV, § 32; *Miller & Lux* v. *Batz,* 131 Cal. 402, 404 [63 P. 680]; *Pacific Inter-Club Yacht Assn.* v. *Richards,* 192 Cal. App.2d 616, 619 [13 Cal.Rptr. 730].) In line with this principle it has been stated that "One dealing with public officers is charged with the knowledge of, and is bound at his peril to ascertain, the extent of their powers to bind the state for which they seem to act. And, if they exceed their authority, the state is not bound thereby to any extent." (*Mullan* v. *State of California,* 114 Cal. 578, 587 [46 P. 670, 34 L.R.A. 262].)[4]

---

[4]In *Mullan,* it was held that the doctrine of estoppel had no application in the case before the court. However, in that case the complaint showed on its face that the plaintiff who claimed compensation for services rendered the state was not validly employed.

█ Adverting to the present case in the light of the fore-going principles, it cannot be said that as a matter of law this is not one of the exceptional cases wherein justice and right require the invocation of the principle of promissory estoppel. The facts pleaded are such that, if true, they clearly establish that a grave injustice would be done to plaintiff if estoppel were not applied. The complaint alleges that the acts upon which promissory estoppel is based were performed by author-ized agents. There is nothing on the face of the amended complaint nor are there such matters as must be considered under the doctrine of judicial notice which have been called to our attention by defendant, or of which we are aware, which require us to hold that use of the doctrine of promissory estoppel would defeat a strong public policy or result in the indirect enforcement of an illegal contract. █ Judicial notice is taken, moreover, of the right of the Department of Public Works to enter into contracts and to acquire property which it considers necessary for state highway purposes. (Sts. & Hy. Code, §§ 94, 100.1, 104, 104.6, 104.8, 118, 135; see *Schnider* v. *State of California*, 38 Cal.2d 439, 443 [241 P.2d 1, 43 A.L.R.2d 1068].) Our research discloses that although the Legislature has authorized the department to enter into such contracts, it has not provided a statutory procedure as to the method to be followed in making such contracts.[5] There-fore, we conclude that the Legislature has left to the depart-ment the determination as to the procedure to be utilized in making such contracts. This circumstance is the feature which distinguishes the instant case from *San Diego.*

Of particular interest, although based on the doctrine of equitable estoppel, are two California cases the circumstances of which are analogous to the case at bench. In *Times-Mirror Co.* v. *Superior Court, supra,* 3 Cal.2d 309, the City of Los Angeles had instituted condemnation proceedings to acquire distinct portions of the petitioner's property and thereafter filed a written notice of the abandonment of such proceedings. The petition sought mandamus to compel the superior court to proceed with such proceedings to final determination. Among the grounds for the writ were the allegations that the peti-tioner, acting solely upon the understanding that its property would be taken for public use, had constructed at a great cost another building at another location suitable for its purposes;

---

[5]Nor has defendant cited or pointed out to us the existence of any such statutory procedure.

that this building would not have been constructed but for said understanding which was based upon certain agreements and acts of the city. These acts and agreements were alleged to consist of the following: That the city had assured the state that it would acquire the petitioner's property either by purchase or condemnation in order to make room for the future development and enlargement of the state building in the city's civic center; that in response to the petitioner's inquiry as to whether the city proposed to take the petitioner's property so that the petitioner could properly plan for its future expansion, negotiations ensued between the petitioner and the city with respect to the fixing of the valuation of the petitioner's property; and that when these negotiations failed, the condemnation proceedings were commenced. The petition alleged further that the petitioner, relying in good faith upon the various acts looking towards the acquisition of its property, as shown by ordinances, resolutions, reports, recommendations, statements and other documents referred to, and believing that the taking of its property in the scheme of developing a civic center was inevitable, commenced the construction of a new building. These facts were held sufficient to plead the unusual circumstances requiring the application of the doctrine of estoppel.

Similarly, in *McGee* v. *City of Los Angeles, supra,* 6 Cal.2d 390, an action in which plaintiff sought to recover the amount of the judgment awarded him in a condemnation proceeding which was subsequently abandoned by defendant city, the complaint alleged that the municipality proposed widening two intersecting streets; that the plaintiff was the owner of a parcel of improved real propery which fronted on both of these streets; that the city instituted condemnation proceedings to acquire that strip of the plaintiff's property which fronted on one of the streets; that at the same time the city made it known to the plaintiff that it would shortly thereafter commence a second proceeding to condemn the strip of land which the plaintiff owned on the other street; that during the first condemnation proceeding, it was stipulated between the parties that the damages to be awarded to the plaintiff for his property and the building thereon should be divided into two amounts, part to be awarded in each condemnation action; that the first action proceeded to a final decree and the city paid the plaintiff the stipulated award therein; that the second action was commenced, proceeded to interlocutory decree and was subsequently abandoned; and that before the abandon-

ment and on the faith of the stipulation, the plaintiff destroyed his building and rebuilt along the proposed new lines at great expense. In reversing a judgment entered upon the sustaining of a demurrer without leave to amend, the appellate court held that the complaint adequately pleaded an estoppel and a cause of action against the municipality on the basis that the cause presented one of those exceptional situations where justice and right required the invocation of the principle of estoppel *in pais* in favor of a citizen or private party against a municipality. With respect to *McGee,* we wish to point out that, although the court there held that the complaint adequately pleaded an estoppel *in pais,* we are of the opinion that in view of the stipulation entered into between the parties the facts alleged were also adequate to plead a promissory estoppel.

The judgment is affirmed as to the first cause of action and reversed as to the second cause of action with directions to the trial court to overrule the general demurrer and to rule on the point presented by the special demurrer.[6] Plaintiff shall recover costs on appeal.

Sullivan, P. J., and Sims, J., concurred.

A petition for rehearing was denied on April 30, 1965, and the opinion was modified to read as printed above.

---

[6]As disclosed by the record the trial court ruled only on the general demurrer and did not rule on the special demurrer directed to the second cause of action.