[Civ. No. 44761. Second Dist., Div. Two. July 28, 1975.]

CORA LEE SMITH et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Philip F. Lanzafame, Telanoff, Bobrowsky, Wallin & Diekes and C. Edward Diekes for Plaintiffs and Appellants.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams, Irwin Schulman and Robert W. Vidor for Defendant and Respondent.

## OPINION

**COMPTON, J.**—This is an appeal from an order of dismissal following the sustaining of a demurrer without leave to amend a complaint for inverse condemnation and damages to property.

Plaintiffs allege in their complaint filed April 24, 1973, and in face of a demurrer we accept these allegations as true, that on July 21, 1966, the

defendant through its highway commission adopted a proposed Route 64 freeway to be located generally between existing Route 1 near Malibu and Route 5. Maps published as part of the resolution of adoption of the route showed the freeway bisecting plaintiffs' property. The resolution to acquire the right of way and to construct the freeway was announced to the public. Pursuant to this resolution plans and designs were prepared which indicated that a substantial part of the plaintiffs' property would be needed for the construction of the freeway as proposed.

Plaintiffs further allege that at no time during the period from 1966 to the filing of the present action on April 24, 1973, has any specific action been taken by the defendant to acquire the property and defendant has presented information to the public that acquisition will not be accomplished until 1981 or later. It is claimed that the delay by defendant is arbitrary, capricious, and unreasonable and constitutes a de facto taking of their property causing damage to the plaintiffs in the amount of $850,000 which is alleged as the fair market value of the property.

Further damages to the sum of $525,000 are alleged in the prevention of the plaintiffs dealing in an open market, loss of prospective purchasers, loss of rents, incomes, and profits, inability to develop the property and incurring of indebtedness in the form of taxes and other expenses merely to maintain the property in its present unimproved state.

Plaintiffs base their claim to recovery on the holdings of *Klopping* v. *City of Whittier,* 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], and *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111].)

In *Klopping,* which also involved a demurrer, the City of Whittier initiated condemnation proceedings against the plaintiffs' property. When extraneous litigation jeopardized the funding for the property, the city dismissed its condemnation action but declared its intention to take the same property in the future. The intent to condemn and the dismissal of the condemnation were both recited in resolutions of the city council.

Plaintiffs sued in inverse condemnation, alleging that the fair market value of their property had declined as a result of the city's announcement of its intention to condemn, that there was a cloud over their property and that they had lost rentals as a result of the city's conduct. The Supreme Court held that if the city had acted unreasonably in

issuing precondemnation statements, either by unreasonably delaying eminent domain proceedings or by other oppressive conduct, the owner was entitled to maintain an action in inverse condemnation.

In *Selby,* plaintiff sued the city and county for declaratory relief, writ of mandate to compel issuance of a building permit on its property and for damages in inverse condemnation. Plaintiff alleged that the action of the city and county in adopting a general plan known as the "Ventura Avenue Area General Plan" which contained a circulation element showing the location of existing streets and proposed streets constituted a taking of the plaintiff's property. Plaintiff specifically alleged that the plans showed an extension of an existing street would result in the taking of a portion of the plaintiff's property. In denying the declaratory relief the court held that the city and county had taken no action with respect to plaintiff's land except to enact a general plan describing proposed streets as required by state law. Plaintiff was said to have had no greater right to relief by virtue of a proposed crossing of his land than any other citizen whose land would be encompassed within the plan. which was merely tentative and subject to change with the actual taking of the property dependent upon future events.

In *Silva* v. *City & County of San Francisco,* 87 Cal.App.2d 784 [198 P.2d 78], which was cited with approval in *Selby,* the board of supervisors had declared that plaintiff's land would be acquired by eminent domain "when necessary." Plaintiff sought a declaration that in a future taking proper compensation should be based on the present value of the land. The court held there was no actual controversy since the only judgment which could be rendered would be purely advisory, i.e., a declaration of the value of the land when the city deemed it necessary to acquire the property. The Supreme Court noted that the position of the plaintiff in *Selby* was even more tenuous than in *Silva* since there was no *present concrete indication* that the county either intended to use the property or that it intended to acquire the property by condemnation.

"Neither *Klopping* nor any other decision of which we are aware holds that the enactment of a general plan for the future development of an area, indicating potential public uses of privately owned land, amounts to inverse condemnation of that land." *(Selby Realty Co.* v. *City of San Buenaventura, supra,* at p. 119.) The adoption of a general plan was said to be "several leagues short of a firm declaration of an intention to condemn property." *(Selby, supra,* at p. 119.)

The *Selby* decision is particularly pertinent to this appeal since the trial court waited for the final decision in *Selby*, which was filed September 27, 1973, before ruling on the demurrer and was cited by the court in its order of dismissal.

Since the plaintiffs argue that an announcement of intent to condemn may accrue from a combination of public announcements and actions such as preparation of design, plans, and maps, the document upon which the plaintiffs rely entitled "Fact Sheet—Route 64 Freeway" will be set out below in some detail in order to serve as a backdrop for the contentions of the parties particularly with respect to the bearing of *Klopping* and *Selby* upon the present case.

The fact sheet dated July 1972, recites the then current status of the freeway. Route 64, generally located between existing Route 1 near Malibu and existing Route 5 (Golden State Freeway), was adopted by resolution of the California Highway Commission on July 21, 1966. The Legislature deleted a portion of the 20-mile route in 1970.

Preliminary design studies to determine the alignment and grade are in progress and will continue until the time scheduled for design public hearings. During these studies, design information will be discussed with local agencies and community groups in order to obtain their comments and opinions.

Design public hearings were to be held between mid-1973 and early 1975 to enable the Division of Highways to discuss the results of its preliminary design studies and to give the public and local agencies the opportunity to ask questions and offer their views and suggestions concerning the proposed design features. Statements covering the effects and impact on the environment and community in terms of housing, noise, and air and water pollution are contemplated.

Following the completion and analysis of the results of the public hearings, freeway agreements are to be negotiated with municipal governments involved with a target date for execution of these agreements set between 1973 and 1975. These agreements are to outline the changes in local streets such as crossings, closings and relocations indicating the location of new frontage roads and freeway on-and-off ramps.

Acquisition of right-of-way and construction are tentatively scheduled in four increments requiring two to three years for each portion with annual allocation of funding and timing thereof to be determined by availability of funds and traffic priorities. The four increments are scheduled during the years of from 1976 to after 1983. (The plaintiffs' property lies within a portion tentatively scheduled for the years 1981-1982.)

Acquisition of property to protect the right-of-way from further developments and for elimination of individual hardship are to be investigated at any time prior to the start of the regular right-of-way acquisition program. Scheduling listed on the sheet is said to be subject to continuing re-evaluation and revision as new events and developments occur.

Plaintiffs in essence claim that their case comes under the principles of *Klopping* because the adoption of Route 64, coupled with public announcements as to its implementation, are the legal equivalent of the factors there found to support an action in inverse condemnation. Plaintiffs' attempt to distinguish *Selby* contending that the defendant's actions here go beyond the mere adoption of a general plan establishing general guidelines for future development of cities and counties.

If an actual resolution specifically authorizing the condemnation of the plaintiffs' property had actually been adopted, Code of Civil Procedure section 1243.1[1] would have been dispositive of the case. (See *Klopping, supra,* at p. 57.)

■ In order to state a case for inverse condemnation there must be an invasion of a valuable property right which the owner possesses and its invasion or appropriation must *directly* and *specifically* affect the land owner to his injury. (*Hilltop Properties* v. *State of California,* 233 Cal.App.2d 349, 355-356 [43 Cal.Rptr. 605, 37 A.L.R.3d 109]; *Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d 110.)

---

[1]Code of Civil Procedure section 1243.1 provides in part: "In any case in which a public entity . . . which possesses the power of eminent domain establishes by resolution or ordinance the necessity to acquire a particular parcel or parcels of real property by eminent domain, and such public entity does not thereafter initiate, within six months, an action in eminent domain to take such parcel, the owner of the parcel may bring an action in inverse condemnation requiring the taking of such parcel and a determination of the fair market value payable as just compensation for such taking. In such inverse condemnation action, the court may, in addition, *or in the alternative,* if it finds that the rights of the owner have been interfered with, award damages for any such interference by the public entity." (Italics added.)

In the instant case the state has announced only that it tentatively intends to construct a freeway along a tentative route subject to many conditions and contingencies. The plan is to be a step-by-step process involving consultation with communities and individuals, assessment of future traffic needs, availability of funding, and apparent constant revision in alignment grade and other physical features as well as consideration of environmental and human impacts which may surface as a result of dialogue between citizen and government. This must be coupled with technological inputs of not only local studies but advancements in the state of the art of creating a better environment.

With the advent of the National Environmental Policy Act of 1969 (42 U.S.C.A. § 4321 et seq.) and the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) a tentative plan to build a highway which impinges upon so many individual interests lies "many leagues short" of realization and is most indistinct as to its final form. (See *Keith* v. *Volpe,* 352 F.Supp. 1324, where the impact of environmental factors has held the Century Freeway project of far more certitude than Freeway 64 in a state of limbo for many years.)

Given the uncertainties of today and the multitude of obstacles to be surmounted before formal condemnation of plaintiffs' property may take place, the present adoption appears to us to be no more than a general plan no more certain of implementation than the one addressed in *Selby.* (See *Navajo Terminals, Inc.* v. *San Francisco Bay Conservation etc. Com.,* 46 Cal.App.3d 1 [120 Cal.Rptr. 108].)

Plaintiffs, citing Streets and Highways Code sections 75 and 90,[2] argue that the long-term planning for freeway adoption makes the adoption of a route the equivalent of the announcement of intent to condemn recognized in *Klopping.*

---

[2]Streets and Highways Code section 75 provides as follows: "Except as otherwise provided by law, the commission at any time and from time to time may: (a) Select, adopt, and determine the location for State highways on routes authorized by law. (b) Allocate, from the funds available therefor, moneys for the construction, improvement or maintenance of the various highways or portions thereof under the jurisdiction of the department. The commission may determine in each case the maximum sum of money that shall be made available therefor. (c) Authorize preliminary surveys to determine the advisability of including in or excluding from the State highway system any highway or portion thereof."

Streets and Highways Code section 90 provides as follows: "The department shall have full possession and control of all state highways and all property and rights in property acquired for state highway purposes. The department is authorized and directed to lay out and construct all state highways between the termini designated by law and on the locations as determined by the commission."

These sections are enabling statutes which merely authorize action which necessarily precedes the condemnation process. They make no commitment which affects any property or right.

Plaintiffs also allege that arbitrary and capricious delay by the state has caused them damage.

Construction of a freeway is no small undertaking. Of necessity, substantial time is required before the concept becomes reality. Deliberate pace in acquisition and construction is demanded by the applicable laws. (See *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049].)

Without question, when the state embarks upon a plan to develop a freeway, because of the public airing which is legally attendant to such a project,[3] marketability of property in the affected area is adversely impacted. On the other hand, invocation of the doctrine of inverse condemnation or the assessment of damages against the state upon the public announcement of the state's plan would result in acquisition of large amounts of property that may never be used and would inordinately increase the cost of any such project. The real result would be a severe hampering of the state's ability to undertake necessary and worthwhile improvements in our highway system.

We cannot find that the state has in the instant case wrongfully impaired the plaintiffs' rights in their property to the extent that plaintiffs are entitled to be compensated therefor either in damages or in an award for inverse condemnation. (*Hilltop Properties* v. *State of California,* 233 Cal.App.2d 349 [43 Cal.Rptr. 605, 37 A.L.R.3d 109]; *Silva* v. *City &*

---

[3]The complex legislative scheme for construction of freeway and expressway systems in California is set out in exhaustive detail in the Streets and Highways Code. (All references in this note are to this code.) In general, it is the intent of the Legislature that highways be created only after a planned and coordinated effort by all state and local agencies with full exchange of information by all concerned. (See § 210.) Hearings to present a forum for exchange of ideas are mandated. (See §§ 210.4, 210.5.)

A California Transportation Plan is provided in chapter 2 of the code for the State Highway System. No freeway or expressway may be adopted until the Transportation Plan is adopted. (§ 252.5.) See also section 253.1 to section 256.1, which list all approved routes and provide for changes to plans and routes after public hearing and information. Freeway 64 is not listed as approved under the section pertaining to state scenic highways. (§ 262.1 to § 263 et seq.) Route 64 is, however, listed separately as a route in the State Highway System since it was adopted earlier in 1964. (See § 364.)

Pursuant to section 252.5, the State Highway Commission may adopt locations for freeways in the county that conform to the transportation plan as adopted and *as updated.* Presumably then, the transportation plan could cause later changes to Route 64.

*County of San Francisco, supra,* 87 Cal.App.2d 784; *Selby Realty Co.* v. *City of San Buenaventura, supra; Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, at pp. 621-622 [37 P. 750].) Certainly this particular property is not singled out for singular and unique treatment in contrast to property of thousands of others along the proposed route.

The delay here is neither capricious nor arbitrary and appears to be the result of prudent scheduling of a major public works which takes into account an annual appropriation procedure, communication with the public by way of open hearings and on-going studies of environmental impact.

The order is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied August 19, 1975, and appellants' petition for a hearing by the Supreme Court was denied October 9, 1975. Clark, J., was of the opinion that the petition should be granted.