637 F.2d 677
 15 ERC 1825
 CITY OF SOUTH PASADENA et al., Plaintiffs-Appellees,
v.
Neil GOLDSCHMIDT et al., Defendants-Appellees,
v.
CITY OF PASADENA, Intervenor-Appellant,
and
City of Alhambra, Intervenor-Appellant,
and
City of Los Angeles, Intervenor-Appellant.
 Nos. 79-3189, 79-3201 and 79-3213.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1980.
Decided April 9, 1981.
 
 Leland C. Dolley & Royal M. Sorensen, Burke, Williams & Sorensen, Los Angeles, Cal., for City of Alhambra.
 Myrtle Dankers, Los Angeles, Cal., for City of Los Angeles.
 Robert W. Vidor, Alletta d'A. Belin, Los Angeles, Cal., for Goldschmidt; Joseph A. Montoya, Susan L. Durbin, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT and NELSON, Circuit Judges, and SPEARS, Senior District Judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The petition for rehearing is denied. The suggestion to modify the opinion of January 23, 1981 is granted. The earlier opinion is withdrawn and the following opinion is substituted.
 
 
 2
 This case involves actions taken by a California highway agency. We affirm the district court's holding that the agency acted within the scope of its authority.
 
 I.
 
 3
 The City of South Pasadena, along with several individual and environmental groups, initiated this litigation in 1973. They sought an order requiring compliance with state and federal environmental laws prior to construction of a six-mile segment of the Long Beach Freeway (state Route 7).
 
 
 4
 Among the defendants were the California Transportation Commission (CTC) and the California Department of Transportation (Caltrans).[1] These agencies (the state defendants) have primary responsibility for constructing state highways in California. The location for Route 7 was established by CTC in 1964.
 
 
 5
 In 1973 the district court entered an order based on a stipulation between the plaintiffs and state defendants, which provided:
 
 
 6
 State Defendants shall prepare an Environmental Impact Report complying with the provisions of Section 102(2)(c) of the National Environmental Policy Act ... and Section 21100 of the California Environmental Quality Act ... in connection with that portion of the proposed Long Beach Freeway Project, State Highway Route 7 between the San Bernardino Freeway and the Interchange of Route 134, Route 210 and Route 7 in the City of Pasadena.
 
 
 7
 The EIS was prepared by Caltrans. After circulating a draft EIS and holding public hearings on the project, it prepared and issued in 1977 a Final EIS for a 1.6-mile alternate project.
 
 
 8
 The major reason for altering the original six-mile project was the displacement of population and business (with a resulting reduction in the property tax base) it would have caused. Most of the displacement would have occurred in South Pasadena.
 
 
 9
 Several federal officials, including the Administrator of the Federal Highway Administration (FHWA), were also defendants in the suit filed by South Pasadena. FHWA administers the Federal-Aid Urban Highway program. California has sought federal funds through this program for Route 7 construction.
 
 
 10
 Upon receipt of the Final EIS from Caltrans, FHWA indicated it would not recommend approval of the alternate project. It found the EIS to be inadequate and the project to lack support of local officials.
 
 
 11
 Meanwhile, the cities of Los Angeles, Pasadena, and Alhambra had intervened in the lawsuit. Unlike South Pasadena, the intervenors are in favor of the six-mile project. They seek to modify the district court's order by adding the following:
 
 
 12
 18. The State Defendants are ordered to prepare and submit to the Federal Defendants a Final Environmental Impact Statement (FEIS) that will meet the requirements of the applicable Federal laws, rules and regulations so that the same will be approved by the Federal Defendants.
 
 
 13
 19. ...
 
 
 14
 20. Prior to submission of the FEIS to the Federal Defendants the FEIS shall be submitted to and approved by the California County Transportation Commission.
 
 
 15
 21. Prior to submission of the FEIS to the Federal Defendants the FEIS shall be submitted to and approved by the Los Angeles County Transportation Commission.
 
 
 16
 22. The 'proposed action' in the FEIS shall be for the approved designated freeway route and location between the San Bernardino Freeway in the south and the interchange of Routes 134, 210 and 7 in the City of Pasadena in the north.
 
 
 17
 In addition, intervenors seek to impose time limits in which the enumerated actions are to take place.
 
 
 18
 The district court denied intervenors' motion to modify the order, on the grounds that Caltrans had not exceeded its authority in preparing the Final EIS on the alternate project.
 
 II.
 
 19
 The grant or denial of an injunction is normally within the discretion of the district court. This court may freely overturn the decision, however, if it was based on an erroneous conclusion of law. Kennecott Copper Corp. v. Costle, 572 F.2d 1349, 1357 (9th Cir. 1978); Douglas v. Beneficial Finance of Anchorage, 469 F.2d 453, 454 (9th Cir. 1972).
 
 
 20
 Intervenors contend Caltrans violated the 1973 Stipulation and Order and exceeded its statutory authority in preparing the Final EIS on the alternate project. The Stipulation and Order, in essence, required compliance with environmental laws. The issues are whether any of those laws were violated and whether Caltrans acted within the scope of his authority. Intervenors do not contend Caltrans acted arbitrarily or capriciously.
 
 
 21
 Five statutes are involved: the Federal-Aid Highway Act, 23 U.S.C. §§ 101 et seq.; the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq.; the California Streets and Highways Code; the California Government Code; and the California Environmental Quality Act (CEQA), Cal.Pub.Res. §§ 21000 et seq.[2]
 
 
 22
 Intervenors argue that because Route 7 is part of the Federal-Aid Urban Highway System, and because NEPA requires FHWA to approve a Final EIS prior to approving a project, Caltrans has prevented FHWA from determining whether a Federal-Aid highway should be completed.
 
 
 23
 Neither the Federal-Aid Highway Act nor NEPA support intervenors' position. The Highway Act explicitly states it "shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed." 23 U.S.C. § 145. It cannot be read to preclude a state from altering a project in response to environmental impacts.[3]
 
 
 24
 Intervenors argue project selection for purposes of the Final EIS rests with CTC, and not with Caltrans, under California law. Both CTC and Caltrans reject this argument.
 
 
 25
 The California courts have not decided this question. Substantial deference is owed to a determination of state law by a district judge residing in the state. United States v. Humboldt, 628 F.2d 549, 551 (9th Cir. 1980).
 
 
 26
 California has a "complex legislative scheme for construction of freeway and expressway systems." Smith v. State, 50 Cal.App.3d 529, 123 Cal.Rptr. 745, 749 n.3 (1975). CTC appears to be the decisionmaking body. It has authority to "select, adopt, and determine" the location for state highways, Cal.Sts. & Hy. § 75, and to "alter or change" such locations. Id. § 71. It may delegate ministerial functions to Caltrans. Id. § 86.
 
 
 27
 A line of cases presenting challenges to CTC decisions to locate or relocate highways supports this view. The California courts have held consistently that the state legislature vested CTC with responsibility to select, adopt, and determine the location of state highways. E. g., Merced County Board of Supervisors v. California Highway Commission, 57 Cal.App.3d 952, 129 Cal.Rptr. 504, 506 (1976).
 
 
 28
 None of the cases, however, addresses the scope of Caltrans' authority. It is clear that highway construction is a long process involving many government agencies. Smith v. State, 50 Cal.App.3d 529, 123 Cal.Rptr. 745, 748-49 (1975).
 
 
 29
 Caltrans has statutory authority to "lay out and construct" state highways on the locations determined by CTC. Cal.Sts. & Hy. §§ 90, 100.1. It is to support CTC in developing balanced transportation planning and policy. Cal.Gov't. § 14030.
 
 
 30
 Caltrans has the power and duty to "maximiz(e) the amount of federal funds which may be available to the state and increas(e) the efficiency by which such funds are utilized." Id. It is authorized to plan and design "transportation systems which the legislature has made" its responsibility. Id.
 
 
 31
 Thus, although CTC's authority to locate state highways is clear, it appears Caltrans performed a discretionary function in selecting and planning particular projects in 1977 when it prepared and issued the final EIS for the 1.6 mile alternate project .
 
 
 32
 CEQA directs "each public agency" to mitigate or avoid the significant effects on the environment of projects it approves or carries out whenever it is feasible to do so. Cal.Pub.Res. § 21002.1(b) (emphasis added). Residents Ad Hoc Stadium Committee v. Board of Trustees of the California State Universities and Colleges, 89 Cal.App.3d 274, 152 Cal.Rptr. 585, 596 (1979) (CEQA aimed at any agency intending to carry out a project).
 
 
 33
 CEQA's provisions supplement Caltrans' responsibilities under the state highway laws. Cf. National Resources Defense Council, Inc. v. Arcata National Corp., 59 Cal.App.3d 959, 131 Cal.Rptr. 172 (1976) (CEQA supplements Forest Practice Act). Caltrans had the task of complying with CEQA's requirements, both procedural and substantive. It was therefore obligated to consider alternatives and mitigate adverse consequences.[4] Those obligations are meaningless without the power to select an alternate project.
 
 
 34
 The regulations jointly promulgated by CTC and Caltrans to implement CEQA provide some support for this conclusion. Caltrans has acted as the Lead Agency, i. e., the agency "responsible for preparation of environmental documents." 21 Cal.Adm.Code § 1508(a). The Final EIS is supposed to incorporate revisions to the project, or reasons for rejecting such proposals. Id. §§ 1509.5(h) and 1511.6(b). If Caltrans lacked the authority to select an alternate project for the Final EIS, it could not fulfill its Lead Agency obligations.
 
 
 35
 In light of its authority under the highway laws and CEQA, we conclude that Caltrans acted within the scope of its statutory authority in preparing the Final EIS on the 1.6-mile alternative.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Of the Western District of Texas
 
 
 [1]
 CTC and Caltrans have superseded various agencies, such as the California Highway Commission and the Department of Public Works, respectively. The current designations will be used here
 
 
 [2]
 The district court had jurisdiction to decide the state law issues presented. As a matter of constitutional power, the court had pendent jurisdiction since the state issues derive from the same operative facts as the federal issues. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)
 The district court did not abuse its discretion in deciding the state law issues. This litigation began in 1973, and it would be a waste of judicial time and unfair to the litigants to separate the state and federal question for resolution in different courts at this stage. See id.; Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).
 
 
 [3]
 FHWA has promulgated regulations to implement NEPA. Those regulations define "highway agency" as the agency with primary responsibility for initiating and carrying forward a project. It shall be "the appropriate State, county or city highway agency." 23 C.F.R. § 771.3(f)
 The regulations state:
 The draft environmental statement should indicate that all alternatives are under consideration and that a specific alternative will be selected by the (highway agency) following public hearing. The final environmental statement will be prepared for the selected alternative.
 Id. § 771.18(j)(3).
 FHWA's regulations thus interpret the Highway Act and NEPA to leave project selection to the state agency and to allow selection of an alternative as the project for the Final EIS.
 Intervenors note that the Stipulation and Order enjoins any construction on the project until FHWA approves a Final EIS. The propriety of that aspect of the order is not before us. The state has not sought to proceed with the project without federal funding.
 
 
 [4]
 Although agencies are to avoid duplication in complying with NEPA and CEQA, the California courts have recognized that CEQA obligations may exceed those imposed by NEPA. E. g., San Francisco Ecology Center v. City and County of San Francisco, 48 Cal.App.3d 584, 122 Cal.Rptr. 100 (1975)