Filed 12/11/14  Lindsey v. City of Fontana CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BRUCE D. LINDSEY et al., | |
| Plaintiffs and Appellants, | E058047 |
| v. | (Super.Ct.No. CIVRS1107119) |
| CITY OF FONTANA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Holstein, Taylor and Unitt and Brian C. Unitt for Plaintiffs and Appellants.

Carpenter, Rothans & Dumont, Steven J. Rothans and Justin Reade Sarno for Defendants and Respondents City of Upland et al.

Rinos & Martin, Linda B. Martin, Adrianna C. Paige and Alex Hackert for Defendants and Respondents City of Fontana et al.

1

# I

# INTRODUCTION

Plaintiffs Bruce B. Lindsey and Linda F. Barbee appeal from a judgment entered after the trial court sustained without leave to amend defendants' demurrer to the fourth amended complaint. Plaintiffs sued defendants, asserting that the Upland and Fontana police departments and its officers had falsely implicated Lindsey in a plot to hire a hit man to murder Barbee. On appeal, plaintiffs argue they have alleged sufficient facts to state civil rights violations under federal and state laws. Defendants counter that plaintiffs cannot amend the defects in their pleadings and no further amendments should be allowed.

We conclude the trial court did not abuse its discretion. Furthermore, plaintiffs have not alleged sufficient facts to support any claim against defendants. We affirm the judgment.

# II

# FACTUAL AND PROCEDURAL BACKGROUND

*A. The Fourth Amended Complaint*

The original complaint was filed on August 3, 2011. A third amended complaint, adding various state law claims was filed on May 14, 2012. This is the second appeal. In May 2014, we affirmed the trial court's order granting the anti-SLAPP motion to strike

(Code Civ. Proc., § 425.16), which was filed by another set of defendants[1] and directed at the first amended complaint. (*Lindsey v. Davis* (May 28, 2004, E056571) [nonpub. opn.].)

In the meantime, plaintiffs filed a fourth amended complaint (FOAC) in August 2012, attempting to allege a single cause of action for violations of civil rights. (42 U.S.C. §§ 1983, 1988.) In October 2012, the trial court entertained defendants' unopposed demurrers and Fontana's motion to strike and sustained the demurrers without leave to amend and granted the motion to strike. The facts, as summarized below, are based on the allegations of the FOAC.

1. *The Settlement Check and the Release*

In October 2010, Lindsey was 57 years old and Barbee was 72 years old and in poor health. Plaintiffs alleged they were an unmarried couple who shared a house on Euclid Avenue in Upland. In 2010, Lindsey and Barbee were both represented by the former defendants, Benson and his law firm. In July 2010, Benson and Davis had invited Lindsey to join a business partnership with them. In October 2010, after Benson's business, The Med Spa, was shut down, purportedly as a front for prostitution, Benson and Davis blamed Lindsey. At the same time, Benson, Davis, and Lindsey had agreed to settle a business dispute about their short-lived partnership for $25,000. On October 27,

---

[1] John L. Benson, Michael Davis, and the law firm of Blomberg, Benson, and Garret, Inc.

3

2010, Benson and Davis asked Lindsey and his lawyer to meet a courier named "Big Mike" at Lindsey's office at 2:00 p.m. so that Lindsey could sign a release to receive the settlement check. Plaintiffs allege on information and belief that Big Mike was an informant for the Fontana police and one of Benson's criminal clients.

Before their meeting, Big Mike called Lindsey and asked him to come to a bar, D.J.'s Lounge, in Montclair. When Lindsey and his lawyer arrived, Big Mike was playing pool with another man. Big Mike insisted Lindsey shake hands with the pool player. Big Mike displayed the check and the release. After Lindsey and his lawyer left the bar to have the release notarized, they met Big Mike at Lindsey's bank and exchanged the release for the check. Lindsey and his lawyer had dinner and Lindsey went home, where he retired to bed around 8:00 p.m. while Barbee was absent from the house.

2. *The Police Conduct*

In October 2010, David Janusz, a Fontana police officer, and the Department of Justice were investigating Lindsey whom they suspected of soliciting Barbee's murder. The police believed Barbee may have been in danger from a hit man hired by Lindsey. Around 2:30 p.m. on October 27, 2010, the Fontana undercover police and the DOJ began surveillance of Barbee at home, and later at a restaurant. Plaintiffs allege that, after Barbee finished having dinner with friends, she was unconstitutionally detained at about 7:30 p.m. by Fontana police and DOJ officers who warned her that Lindsey had

4

hired a hit man to kill her. Plaintiffs contend the officers made misrepresentations in order to obtain an emergency protective order[2] (EPO) and to gain access to the Upland residence. The police questioned Barbee for several hours about her assets, Lindsey's business, and his involvement with motorcycle gangs, guns, and drugs. When Barbee would not cooperate, Officer Janusz falsified the application for an EPO. Eventually the police told Barbee it was safe to return home because the hit man had "gone away."

Around 11:15 p.m. the same night, about 12 or 13 officers from the Upland and Fontana police departments and the DOJ pounded on the front door of the Upland house. They broke through the locked door, handcuffed Lindsey, and searched the house without a warrant. Lindsey was shown a photograph of the man who had been playing pool with Big Mike, the courier. The man in the photograph was described as a known hit man, hired to kill Barbee. The police refused to allow Lindsey to contact his lawyer. The police ransacked the house, cut open a locked safe, and stole guns, cash, and valuables. The police arrested Lindsey for possession of an unregistered assault rifle. (Pen. Code, § 12280, subd. (b).) The criminal charges against Lindsey were ultimately dismissed on October 24, 2011.

Around 12:30 a.m. on October 28, 2010, a Fontana police officer drove Barbee to the home of her friend, Ester Stamps, instructing Barbee not to contact anyone. Around

_____

[2] An EPO is issued under the Family Code statutes enacted for the prevention of domestic violence. (Fam. Code, § 6220.) The EPO in this case stated that Lindsey had solicited the murder of Barbee and they had a history of domestic violence.

5

2:00 a.m., the police said Barbee was free to return home.  The police told Barbee they had arrested Lindsey for gun possession.  She was also advised not to worry because "the hit man was gone."  Lindsey was released on bail but could not have contact with Barbee for six days, causing her to be frantic and anxious.  Lindsey and Barbee began seeing a psychologist.

*3.  The Demurrers and Motion to Strike*

The Fontana and Upland defendants filed general and special demurrers for failure to state a cause of action and on the grounds of uncertainty.  Fontana  also filed a motion to strike the claim for punitive damages.

Plaintiffs did not file timely opposition and, after the hearing, the court sustained the demurrers without leave to amend and granted the motion to strike.  The court entered judgment on November 26, 2012.

III

FAILURE TO STATE A CAUSE OF ACTION

*A.  Standard of Review*

The appellate court reviews a ruling on demurrer to determine whether the complaint states a cause of action:  "'Because this matter comes to us after the trial court sustained the defendant's demurrer, "we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity" of the decision below.'  [Citations.]"  (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558.)  A section 1983 claim must demonstrate facial

6

plausibility. (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678-679.) "[I]f a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879, fn. 9, citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiff has the burden to show a complaint may be amended. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) It is an abuse of discretion to deny leave to amend only if an amendment is potentially effective. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542.)

## B. *Ruling on the TAC*

Plaintiffs have struggled repeatedly to plead a legally sufficient claim. In the third amended complaint (TAC), in addition to the first cause of action for civil rights violations, plaintiffs alleged claims for battery, false imprisonment, and fraud.[3] The trial court prepared a detailed, written, 16-page ruling on defendants' demurrers and Fontana's motion to strike. The ruling reviewed the history of plaintiff's multiple pleadings. It summarized the substance of plaintiffs' claims: that the police had detained and interrogated Barbee for hours, based on the pretext that Lindsey had hired a hit man to kill her; that the police had obtained an EPO without Barbee's consent; and that the police had unlawfully entered Lindsey's home, questioned him, refused to let him contact

---

[3] Other causes of action for infliction of emotional distress and malicious prosecution do not appear in the appellate record. Page 26 of the TAC is missing.

a lawyer, searched the premises—including a tenant's apartment—broke into a safe, and seized an assault weapon and other items. Allegedly the police misconduct was somehow prompted by Benson seeking revenge against Lindsey.

The ruling also recited at length the standard of review and legal principles governing demurrers and explained in detail why the state law tort causes of action were barred by the Government Code. The demurrers to those causes of action were sustained without leave to amend.

Regarding the Title 42 United States Code section 1983 (section 1983) claim, the ruling stated, "to survive a demurrer, the plaintiff must allege specific and nonconclusory facts showing the defendant's acts deprived him/her of a right, privilege or immunity secured by the federal Constitution or federal law. *Breneric Assocs. v. City of Del Mar* (1998) 69 Cal.App.4th 166, 180; *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 267-68." After a comprehensive discussion of the applicable law for section 1983 liability and the TAC, the trial court concluded that the allegations were not sufficient to plead a *Monell*[4] violation and to state a cause of action under section 1983 for municipal liability. Citing *Blank v. Kirwan, supra,* 39 Cal.3d at page 318, the court warned, "[u]nless Plaintiffs can plainly articulate a specific policy to

---

[4] *Monell v. Department of Social Services* (1978) 436 U.S. 658, 690-691 ["constitutional deprivation through an official policy or custom."]

support their *Monell* claims, the court will sustain the demurrer without leave to amend

. . . ."

As to the constitutional claims against individual officers, the trial court

concluded, "to allow the individual defendants to meaningfully respond to the complaint,

there needs to be more specific allegations with respect to which legal rights were

violated by what conduct of specific defendants.  These defects may be curable, even

though Plaintiffs' counsel seems to have some difficulty in articulating how it will be

done.  **The court will permit one final attempt to cure these defects**.  [Emphasis

added.]"

*C.  Leave to Amend*

The FOAC represents plaintiffs' fifth attempt to state a viable legal claim.  On

appeal, plaintiffs are represented by appellate counsel, not by the trial counsel who

unsuccessfully drafted the previous versions of the complaint.  Plaintiffs' appellate

counsel acknowledges the imperfections of the FOAC and the need to amend it again.

Nevertheless, plaintiffs contend the facts that can be derived from the current complaint

are sufficient to state several causes of action if plaintiffs are given leave to amend and

are represented by "new counsel, sufficiently experienced in drafting pleadings."

Under the abuse of discretion standard, the appellate court will reverse a trial court

ruling only upon a showing of "a clear case of abuse" and "a miscarriage of justice."

(*Blank v. Kirwan, supra,* 39 Cal.3d at p. 331.)  An appellant must show how it is possible

to amend the complaint to change the legal effect of the pleading.  (*Fuller v. First*

9

*Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962.) "If the plaintiff does not proffer a proposed amendment, and does not advance on appeal any proposed allegations that will cure the defect or otherwise state a claim, the burden of proof has not been satisfied. [Citations.]" (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 613-614; *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) An appellate court will reverse for abuse of discretion only if it determines that there is a reasonable possibility that the pleading can be cured by amendment and a party did not have a fair opportunity to correct a defective complaint. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318; *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.)

Here, the trial court gave plaintiffs many opportunities to cure their defective pleadings. In opposing the final demurrer, plaintiffs did not submit a proposed fifth amended complaint, curing the defects. On appeal, they do not explain how another amendment would improve the complaint—except to promise that a better lawyer could organize the facts to tie them to the elements of the proposed causes of action. Plaintiffs have not demonstrated how they were denied a fair opportunity to correct the defects in their complaint. Plaintiffs have failed to show their ability to amend and cure their pleadings.

In *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, a private antitrust action, defendants brought demurrers to each successive complaint over the course of two years. The matter was dismissed on demurrer to the fourth

amended complaint after plaintiffs failed to allege an unlawful business practice and injury. The appellate court indicated, "[Plaintiffs] demonstrate that they are unable or unwilling to amend to cure the defects specified in various special demurrers to their complaint which were sustained on similar grounds designated by two different trial judges. . . . Leave to amend further is properly denied when a plaintiff fails to amend to correct defects on the basis of which special demurrers to a previous complaint were sustained, or as directed by the court when sustaining such demurrers." (*Id.* at p. 327.)

In another case *Titus v. Canyon Lake Property Owners Assn.* (2004) 118 Cal.App.4th 906, plaintiff was denied leave to amend a fourth time. In *Tudor v. City of Rialto* (1958) 164 Cal.App.2d 807, 814 the appellate court commented, "It is difficult to establish any clear rule as to just how far a trial court should go in aiding a pleader by detailed explanation of the defects in the pleading. However, whereas here the demurrer itself and the authorities cited in support thereof before the trial court amply pointed out the defects and plaintiffs in their amended complaint failed to in any degree supply the deficiency shown, the trial court's action in refusing to permit amendment to the amended complaint will not be disturbed unless there has been a manifest abuse of discretion."

No bright-line rule exists regarding how many opportunities to amend a party must be given. "Perfection in pleading" is not expected or required. (*Lloyd v. California Pictures Corp.* (1955) 136 Cal.App.2d 638, 643.) However, it is not abuse of discretion to deny leave to amend when a complaint is incapable of amendment. (*Ibid*.) If a party

11

refuses to take direction from the court and makes no further amendment to the pleading at issue, dismissal with prejudice is justified. (*Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 635, citing *Hilltop Properties v. State of California* (1965) 233 Cal. App.2d 349, 361-362; *Sutter v. Gamel* (1962) 210 Cal.App.2d 529, 533; *Chicago Title Ins. Co. v. Great Western Financial Corp., supra,* 69 Cal.2d at p. 327.) Here, the court repeatedly provided specific direction to plaintiffs about curing the deficiencies of their complaint which they disregarded. (See *Eustace v. Dechter* (1938) 28 Cal.App.2d 706, 711; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 911.) Denial of leave to amend the FOAC was not an abuse of discretion under these circumstances.

*D. Section 1983*

Plaintiffs admit their complaint is subject to general demurrer for failure to state a claim and to special demurrer because it is uncertain and ambiguous. Nevertheless, they argue that, based on reasonable inferences that can be made from the allegations of the FOAC, they have valid claims that can be fixed if they are permitted one more chance to amend. (*Wennerholm v. Stanford University School of Medicine* (1942) 20 Cal.2d 713, 716.) We disagree.

The parties agree defendants were acting under color of law. The issue is whether defendants' conduct deprived plaintiffs of their rights, privileges, or immunities under the Constitution or federal law: "Section 1983 allows individuals to sue state actors for violating their federal constitutional or statutory rights. (*Parratt v. Taylor* (1981) 451 U.S. 527, 535, 68 L .Ed. 2d 420, 428, 101 S. Ct. 1908, overruled in part on other grounds

12

in *Daniels v. Williams* (1986) 474 U.S. 327, 330-331, 88 L.Ed.2d 662, 668, 106 S.Ct. 662.)  Section 1983 '"is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."'  (*Graham v. Connor* (1989) 490 U.S. 386, 393-394, 104 L.Ed.2d 443, 453-454, 109 S.Ct. 1865.)"  (*O'Dea v. Bunnell* (2007) 151 Cal.App.4th 214, 219.)

A complaint that offers "labels and conclusions" or "'a formulaic recitation of the elements of a cause of action will not do.'"  (*Ashcroft v. Iqbal, supra,* 556 U.S. at p. 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, citing *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929.)  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  (*Ashcroft,* at p. 678, quoting *Bell,* at p. 557.)  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  [Citations.]  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  (*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988.)

To give factual support to their section 1983 claims, plaintiffs allege that Upland and Fontana police officers detained and interrogated Barbee for hours, during which time they also conducted a warrantless search of plaintiffs' residence while subjecting Lindsey to excessive force.  Based on those facts, plaintiffs assert they can state a cause of action for violations of the Fourth and Fifth Amendments.  Plaintiffs argue that the EPO issued by the superior court did not justify detention and the warrantless search

13

because the police conduct did not serve an interest "beyond the normal need for law enforcement." (*Henderson v. City of Simi Valley* (9th Cir. 2002) 305 F.3d 1052, 1057.)

As further alleged in the FOAC, the reason the police entered plaintiffs' residence was to enforce the EPO and to search for weapons. The EPO was issued under the Domestic Violence Prevention Act, Family Code section 6200 et seq., and to protect Barbee from danger. Family Code section 6250 provides: "A judicial officer may issue an ex parte emergency protective order where a law enforcement officer asserts reasonable grounds to believe any of the following: [¶] (a) That a person is in immediate and present danger of domestic violence, based on the person's allegation of a recent incident of abuse or threat of abuse by the person against whom the order is sought. [¶] . . . [¶] (d) That an elder or dependent adult is in immediate and present danger of abuse as defined in Section 15610.07 of the Welfare and Institutions Code, based on an allegation of a recent incident of abuse or threat of abuse by the person against whom the order is sought. . . ."

Plaintiffs alleged that the police believed that Lindsey may have been involved in a plot to kill Barbee and that Lindsey possessed a firearm. Based on the threat to Barbee, Fontana Police Officer Janusz followed the statutory procedures requiring a law enforcement officer specifically to request an EPO from the superior court, reduce it to writing, and sign it. (Fam. Code, §§ 6250.3 and 6270.) A person subject to an EPO shall not possess a firearm. (Fam. Code, § 6389.)

Family Code section 6272 further provides: "(a) A law enforcement officer shall

14

use every reasonable means to enforce an emergency protective order. [¶] (b) A law enforcement officer who acts in good faith to enforce an emergency protective order is not civilly or criminally liable." After the EPO was issued, the Fontana and Upland police undertook to enforce it. The Upland police did not even participate in obtaining the EPO; they were only involved in enforcement.

Although plaintiffs allege Officer Janusz falsified the grounds for requesting the EPO, they do not allege that Janusz or the other defendants were acting in bad faith because they knew Lindsey was not actually trying to kill Barbee. Plaintiffs ignore the statutory immunity afforded for the good-faith enforcement of an EPO. Even if defendants were ultimately wrong about the threat posed to Barbee, the allegations of the complaint do not support a reasonable inference that defendants knew she was not in danger but, nevertheless, conducted a massive, expensive, and pointless police action against plaintiffs. Under these circumstances, the detention and the warrantless entry do not give rise to constitutional violations and section 1983 liability.

As another basis for section 1983 liability, Lindsey contends he was subjected to excessive force based on the conduct of a dozen or so armed officers who taunted him, broke into his home, handcuffed him, and shoved him around. (*Tennessee v. Garner* (1985) 471 U.S. 1, 8; *Cameron v. Craig* (9th. Cir. 2013) 713 F.3d 1012.) Barbee argues that the Fontana police conduct was "calculated to intimidate and unnerve her," supporting her claim for excessive force.

*Craig* explains that the reasonableness of a particular search or seizure must be

15

assessed based on the objective facts and circumstances that confronted the officers or officers. The courts typically consider three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. (*Cameron v. Craig, supra,* 713 F.3d at p. 1021, citing *Graham v. Connor, supra,* 490 U.S. at p. 396.)

In *Cameron*, numerous armed sheriff's deputies participated in arresting the ex-girlfriend of another deputy. Her purported offense was using his credit card to buy furniture for herself and their two children after they broke up. The Ninth Circuit recognized that her "'suspected crimes were relatively minor and non-violent;'" there was no reason to suspect her or her roommates posed a threat to officer safety; and she was not resisting arrest. (*Cameron v. Craig, supra,* 713 F.3d at pp. 1021-1022.) Nevertheless, Cameron's ex-boyfriend led six to 10 deputies into her home with guns drawn early in the morning. "Those deputies pointed weapons at Cameron, grabbed Cameron by the arms and shoulders, pushed her in the back down a hallway, and then tightly handcuffed her. On this view of the facts, a reasonable jury could find that the deputies used excessive force." (*Id.* at p. 1022.)

The facts and circumstances here differ significantly from *Cameron*. The EPO was issued based on "immediate and present danger." The suspected crime—solicitation of murder—was extremely serious. Lindsey was also suspected of possessing a gun, posing an immediate safety threat. Lindsey was uncooperative and refused entry to the

16

officers without a warrant. Barbee, of course, was held by the Fontana police for her own protection and there are no allegations of physical force used against her. This is not a case in which there is a jury question about "whether the force applied by the officers was objectively reasonable under the totality of the circumstances." (*Santos v. Gates* (9th Cir. 2002) 287 F.3d 846, 855.) Plaintiffs' federal claim of excessive force is not supported under these factual circumstances.[5]

*E. Monell Claim*

Plaintiffs also admit the FOAC fails to allege that Fontana or Upland "'had a deliberate policy, custom, or practice'" that resulted in the constitutional violations. (*AE ex rel. Hernandez v. County of Tulare* (9th Cir. 2012) 666 F.3d 631, 636, citing *Whitaker v. Garcetti* (9th Cir. 2007) 486 F.3d 572, 581.) The *Monell* pleading requirements announced in *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1216 are: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."

---

[5] For the same reasons that the section 1983 claims fail, we conclude plaintiffs cannot state a new state law cause of action for constitutional violations under Civil Code section 52.1.

17

Plaintiffs argue that, although their "complaint does not directly indentify express written policies of either city or police department, such policies, customs or practices can be inferred from the facts." We doubt it. Plaintiffs seem to argue, based on this single incident, that they can allege defendants have a custom, policy, or practice of not training their police officers adequately. Plaintiffs, however, have not—and apparently cannot—allege facts showing a longstanding, widespread practice or custom. The Supreme Court has cautioned that municipal liability "for a deprivation of rights is at its most tenuous where a claim turns on failure to train." (*Connick v. Thompson* (2011) ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417, citing *Oklahoma City v. Tuttle* (1985) 471 U.S. 808, 822-823, 105 S.Ct. 2427, 85 L.Ed.2d 791; *Marsh v. County of San Diego* (9th Cir. 2012) 680 F.3d 1148, 1159; *Villegas v. Gilroy Garlic Festival Ass'n* (9th Cir. 2008) 541 F.3d 950, 955.) The facts here offer no support, express or implied, for a *Monell* claim.

F.  *State Tort Claims*

Plaintiffs also seek to restore state tort claims which were eliminated when the court sustained defendants' demurrers to the TAC without leave to amend those causes of action. These claims were likely time-barred because they were not filed until May 2012, when the time to file expired in August 2011. (Gov. Code, § 945.6, subd. (a)(1).)

But, even if the state tort claims were timely, we reject plaintiffs' argument that the city defendants may still be vicariously liable for the police defendants' use of excessive force. (*Scruggs v. Haynes* (1967) 252 Cal.App.2d 256, 264; *Mary M. v. City of*

18

*Los Angeles* (1991) 54 Cal.3d 202, 215; Gov. Code, § 820.4.) As we have discussed above, the factual circumstances as alleged do not establish excessive force. The police defendants were also immune from liability under Government Code section 821.6 for conduct related to the enforcement of the EPO, even if they acted maliciously or without probable cause. (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210.) Because the police defendants are immune, the city defendants are also immune from liability for the state tort claims. (Gov. Code, § 815.2, subd. (b).)

IV

DISPOSITION

Plaintiffs cannot assert any viable claim against defendants. The trial court did not abuse its discretion in sustaining the demurrer to the fourth amended complaint without leave to amend. We affirm the judgment.

Defendants are the prevailing parties and are entitled to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


KING
J.

19